HARPER v. WINFIELD STATE BANK et al.
(No. 1392.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 21, 1915.)

1. BILLS AND NOTES ⬥26—DRAFT—LIABILITY OF DRAWER.

The drawer of a draft undertakes in legal effect to pay the sum mentioned therein to the owner of the draft, upon notice of dishonor duly given, if it is not accepted and paid by the drawee.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 31, 34; Dec. Dig. ⬥ 26.]

2. BILLS AND NOTES ⬥495—PRESUMPTION—GUARANTY.

Where defendant's draft, with bill of lading to a third party attached, was made payable to plaintiff bank in payment of money due to it from such third party, and, after assignment of the bill of lading, the amount was credited to such party's account, and the draft was thereafter protested, and, after indulgence to defend-

ant, such third party indorsed the draft at the bank's request, there was a presumption that his undertaking or guaranty was a part of the original transaction.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1663–1668; Dec. Dig. ⬥ 495.]

3. BILLS AND NOTES ⬥241—GUARANTY—EFFECT.

One who, as part of the original transaction, indorses a draft, is liable to pay it if the drawer fails to do so.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 542, 547–559; Dec. Dig. ⬥241.]

4. VENUE ⬥22 — RESIDENCE OF PARTIES — STATUTE—SUBSEQUENT HOLDER.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 4, providing that, where there is more than one defendant, suit may be brought in the county where one of them resides, a guarantor upon a draft was a necessary or proper party to the owner's suit thereon, and where plaintiff bank, the payee, and owner and the guarantor were residents of T. county, and the drawer, a party defendant, resided in H. county, the action was properly brought in T. county; and the plaintiff did not become a subsequent holder by indorsement by a third party, within the proviso that the transfer or assignment of a note, etc., should not give any subsequent holder right to institute suit thereon in any other county than that in which suit could have been brought if no assignment had been made.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 35–37; Dec. Dig. ⬥22.]

5. BILLS AND NOTES ⬥437—DRAFT—LIABILITY OF DRAWER—DISCHARGE—SALE OF PROPERTY.

The drawer of a draft to plaintiff bank, to which a bill of lading in the name of a third person was attached, giving it a lien on the proceeds of certain cotton with a right of sale, was not released from his liability by agreement between plaintiff's cashier, the guarantor, and a third person that such third person should sell the cotton; and, where it was sold at its market price and fully credited on the drawer's debt, he could not complain of irregularities in the sale.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1275, 1276, 1279, 1280; Dec. Dig. ⬥437.]

Appeal from Titus County Court; Sam Porter, Judge.

Action by the Winfield State Bank against Walter Harper and others. Judgment for plaintiff, and defendant Harper appeals. Affirmed.

The suit was by the appellee bank to recover $114.55 as due against the maker, indorser of, and drawee of the following draft:

"Winfield, Texas, October 29, 1913.

"Pay to the order of the Winfield State Bank nine hundred ninety-nine dollars and eighty-two cents for value received and charge to account of                    Walter Harper.

"To Felix Nelson, Sulphur Springs, Texas."

The maker of the draft, Walter Harper, interposed a plea of privilege to be sued in Hopkins county, which was overruled by the court. Judgment was entered by the court in favor of the bank against the maker and indorser, but in favor of the drawee. The maker of the draft appeals.

The material facts are that Walter Harper was a cotton buyer, and had contracted to sell Felix Nelson 250 bales of cotton at an agreed price, basis middling, grades and weights guaranteed, and had delivered on his contract 225 bales of cotton. On October 29, 1913, Walter Harper went from Mt. Pleasant to Winfield, and there bought, at an agreed price, from Miller & Tabb, a copartnership, 15 bales of cotton, and from W. T. Cameron 10 other bales of cotton. These 25 bales of cotton made the exact amount necessary · to fill the contract with Nelson. After purchasing the cotton, Walter Harper at once personally graded same. It was then delivered to the Cotton Belt Railway Company at Winfield for shipment to Sulphur Springs. The bill of lading was issued in the name of Miller & Tabb for the 15 bales, and in the name of W. T. Cameron for the 10 bales, consigned to shipper's order, notify Felix Nelson, Sulphur Springs, Tex. Walter Harper then drew two drafts for the respective amounts; the one involved in this suit being set out above. It appears that Miller & Tabb were indebted to the Winfield Bank for money advanced by it to them for the purpose of paying, in the first instance, for the cotton; and they had the draft made payable to the bank, in payment of the money due. Miller & Tabb assigned the bill of lading and delivered the draft to the bank, and the bank on the same date credited the amount of the draft to the overdrawn account of Miller & Tabb. The draft and the bill of lading were then forwarded by the bank, in due course of business, to the First National Bank of Sulphur Springs, and payment thereof by Felix Nelson, the drawee in the draft, was refused, whereupon the draft was protested, and the fees of protest paid by the bank at Winfield. Felix Nelson claimed the right to refuse to pay the draft or receive any more cotton until alleged losses in weight on the 225 bales previously delivered had been adjusted by Walter Harper. After being notified of the draft's being dishonored, Walter Harper asked the Winfield Bank to hold it until a certain date and then return to same bank for payment. The Winfield Bank then asked Miller & Tabb to indorse the draft, which they agreed to do and did do. At the date specified by Harper, the Winfield Bank returned the draft to the bank at Sulphur Springs. Payment was again refused· by Nelson, and the draft was returned to the Winfield Bank. The cashier of the Winfield Bank and Miller & Tabb and W. T. Cameron then agreed that W. T. Cameron should sell the cotton, which was at Sulphur Springs. The 15 bales of cotton were sold by Cameron at the market price, which was $110.55 less than the amount of the draft. The difference was due to decline in market price. The proceeds of the sale were applied by the bank as a credit on the draft. It was proved that Miller & Tabb and the Winfield Bank were residents of precinct No. 8 in Titus county, and Walter Harper was a resident of precinct No. 1 in Hopkins county.

Rolston & Rolston, of Mt. Pleasant, for appellant. J. M. Burford, of Mt. Pleasant, for appellees.

LEVY, J. (after stating the facts as above). [1] The appellant contends that the court was in error in overruling his plea of privilege to be sued in the place of his residence. It is thought that the provision of the statute authorizing suits to be brought against plural defendants in the county where any one of them resides is applicable to this suit. According to the face of the draft sued upon, the bank was the payee. And the object of drawing the draft in favor of the bank instead of Miller & Tabb was, it appears, for the purpose of having the bank credit Miller & Tabb with the proceeds of the paper in extinguishment of their account then due and owing the bank. The bank, it fairly appears, received the instrument, together with an assignment of the bill of lading, and credited the amount of the draft on the books of the bank to Miller & Tabb upon their account owing the bank. The effect of the transaction, by intention of the parties, was to make the bank the owner of the draft with its attendant security of the bill of lading for the cotton. And Harper, being the drawer of the draft, undertook, in legal effect, to pay the sum mentioned to the owner of the draft, if the draft was not accepted and paid by the drawee, and upon notice of the dishonoring of same being duly given him.

[2] Upon protest of the draft, and due notice to Harper, and after further indulgence in time requested by Harper was given him by the bank, Miller & Tabb put their names on the back of the draft at the request of the bank. As it plainly appears that the bank was the payee in the face of the draft, and the actual owner of it by the intention of the parties at the time of its delivery in the first instance, the subsequent placing of their names on the back by Miller & Tabb could not be properly held to have transferred any title or interest of Miller & Tabb to the bank; but rather the placing of their names on the back was to add strength and credit to it. Upon the record we cannot say that the placing of their names on the draft was not a part of the original transaction between the bank and Miller & Tabb. Placing their names on the draft at the request of the bank would raise the presumption, in the absence of evidence to the contrary, that their guaranty, which is the effect, was a part of the original transaction.

[3, 4] The effect of the guaranty by Miller & Tabb was to pay the draft if the maker failed to do so. Therefore, if the drawer of the draft was liable to the bank on his obligation, the guarantors were liable also, and were proper parties to the suit. A suit may

be brought against plural defendants in the county where any one of them resides. Subdivision 4, art. 1830, Vernon's Sayles' Stat. Construing this subdivision, it has been held that the defendant, who resides in the county where the suit is brought, must be either a necessary or proper party defendant; and, if he is not, then a plea of privilege by a defendant of another county joined with him in the action should be sustained. Railway Co. v. Mangum, 68 Tex. 342, 40 S. W. 617; Mathonican v. Scott, 87 Tex. 396, 28 S. W. 1065; Cobb v. Barber, 92 Tex. 309, 47 S. W. 963. The provision of the statute extends to one who is liable as a guarantor of the claim. Turner v. Brooks, 2 Tex. Civ. App. 451, 21 S. W. 404; Cleveland v. Campbell, 38 S. W. 219. The proviso added to the former act by the Acts of 1913 has no application to the case as presented by the record. The bank in this case being the payee in the face of the draft, and the legal owner, did not become a "subsequent holder" of the draft by the indorsement of Miller & Tabb, as comprehended by the proviso mentioned.

[5] It is concluded that, in view of the facts, the other assignments should be overruled. The drawer of the draft was liable if the drawee failed to pay the same, and upon due notice to him, all of which is shown. And having a lien on the cotton, as the bank did, a sale of the cotton for the account of the drawer was authorized. The proceedings respecting the sale may properly be claimed to have been irregular, but it reached no further than a mere irregularity of proceeding. The agreement respecting the fact and mode of sale cannot be construed as having the legal effect of releasing appellant from his liability. The cotton was sold, it appears, at the market price, and the proceeds actually and fully credited on the debt of appellant, so that no injury resulted in the least to appellant.

The judgment is affirmed.