# MAY, 1923.

## W. O. KIDDER v. ED. HALL, COMMISSIONER OF INSURANCE AND BANKING, ET AL.

No. 3866. Decided May 9, 1923.

(251 S. W., 497).

1.—Jurisdiction of Supreme Court—Mandamus—Insolvent Bank—Claim Rejected by Bank Commissioner—Action.

Action on a claim against an insolvent state bank taken over by the Commissioner of Banking and which has been rejected by him must be brought in the District Court of the county where the bank was situated, the property being in the custody of the law and its settlement to be administered under the direction of that court. The Supreme Court has no jurisdiction to direct the Commissioner, by mandamus, to allow it. (Pp. 52-55).

2.—Same—Discretion of Officer.

The Commissioner of Banking, in the allowance or rejection of claims against an insolvent state bank taken under his control must exercise his

113 Tex.—4.

judgment and discretion, and this, involving questions of fact, is not subject to control by the Supreme Court through writ of mandamus.   (P. 55).

### 3.—Same—Legal Remedy.

The holder of a claim against an insolvent state bank has a clear legal remedy against its improper rejection by the Commissioner of Insurance, by the action given him by the statute in the District Court, and cannot obtain such allowance through writ of mandamus.   (P. 55).

### 4.—Same—Banking—Depositor—Purchaser of Draft.

One who has purchased, not by check against his own deposit, but by payment of cash, the draft of a State bank upon another bank does not thereby become a depositor in the bank drawing same when payment of the draft, the drawer meantime having become insolvent, is refused by the drawee.   Not being an unsecured depositor, he has no right to require the State Banking Board to protect his debt against the drawer by resort to the State Guaranty Fund.   Middlekauff v. State Banking Board, 111 Texas, 561, distinguished.   (Pp. 55-58).

Original proceeding in the Supreme Court by Kidder to obtain writ of mandamus against Hall, as State Commissioner of Insurance and Banking, and against the members of the State Banking Board.

*Croom, Goldstein & Croom,* for relator.—The holders of Certificates of Deposit are depositors, and where the Certificate of Deposit is non-interest bearing and unsecured it is protected by the Depositors' Guaranty Fund of the State of Texas, although the deposit is evidenced by a Certificate of Deposit instead of a pass book or deposit slip.   J. H. Wilkes & Co. v. Arthur, 74 S. E., 361; Clark v. Chicago Title & Trust Co., 186 Ill., 444; Middlekauff v. State Banking Board, 111 Texas, 561.

The holder of a Cashier's Check, originally issued by a bank to a given person upon the deposit of cash or its equivalent with said issuing bank by said person, and being made payable to the order of said person making the original deposit, is a depositor within the purview of the Depositors' Guaranty Fund of the State of Texas and is entitled to a full payment out of said fund.   Singer Mfg. Co. v. Summers, 143 N. C., 102; State v. Garland, 65 Wash., 666; Brannan's Neg. Inst. Law, 393; State v. Corning State Bank, 113 N. W., 500; Middlekauff v. State Banking Board, 111 Texas, 561; Wilkes & Co. v. Arthur, Clark v. Trust Co., supra; Forest v. Safety Banking & Trust Co., 174 Fed., 345; Lummus Cotton Gin Co. v. Walker, 70 So., 755; Brown v. Sheldon State Bank, 117 N. W., 289; State v. Corning State Bank, 113 N. W., 500.

Cashiers' checks issued by a bank upon a contemporaneous deposit of cash or its equivalent with said bank and made payable to a depositor or his order for money evidences the obligation of the bank to pay a certain sum on presentation of the check properly endorsed, and is evidence of the deposit; and in no wise does such

cashier's check operate as an extinguishment of the obligation of the bank to pay the depositor a sum certain on return of the check properly endorsed, which obligation is created by the deposit.

A cashier's check issued upon a deposit of money or its equivalent is conceived of as a deposit by the Department of Insurance and Banking of the State of Texas, as well as the several banks operating under what is commonly known as the Guaranty Fund plan.

*W. A. Keeling,* Attorney-General, and *Wallace Hawkins* and *John W. Goodwin,* Assistants, for respondents.—Remedy, if any, by prerogative writ of mandamus issuing from the sovereign may not be invoked where there is other established, adequate legal or common law remedy. Rev. Stats., arts. 446, 464, 486; Austin v. State Bank of Teague, 205 S. W., 839; Bledsoe v. International R. Co., 40 Texas, 537.

The Commissioner of Insurance and Banking and the State Banking Board are State officers and constitute part of the executive department of the State Government, vested with discretion and judgment in classifying, approving and paying claims out of the Depositors Guaranty Fund, and their action cannot be reviewed or reversed in a proceeding for writ of mandamus. Const., art. 2, sec. 1; Rev. Stats., art. 464; Lovitt v. Lankford, 145 Pac., 767; Lankford v. Okla. Eng. Co., 35 Okla., 404; Columbia Bk. & Tr. Co. v. U. S. F. & G. Co., 33 Okla., 535; Lankford v. Platte Iron Works, 235 U. S., 475; Depoyster v. Baker, 89 Texas, 155.

Cash purchaser of bank exchange thereafter becoming worthless by reason of insolvency of the drawer bank, not otherwise a depositor of said bank, does not thereby become depositor of such failed bank so as to receive security under the Depositors' Guaranty Fund. Bank v. Austin, 205 S. W., 839; Widman v. Kellogg, 133 N. W., 1020.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This is an original action for mandamus against the Commissioner of Insurance and Banking and the State Banking Board, to compel the former, (a) to allow a claim against the Farmers & Merchants State Bank of Ranger, an insolvent State bank; (b) to classfy the claim as a noninterest-bearing and unsecured deposit; and (c) to require the State Banking Board to pay the claim thus allowed and classified out of the Depositors' Guaranty Fund provided for by the banking laws of the State.

On October 24, 1921, E. A. Estes purchased, in the usual way, from the Farmers & Merchants State Bank of Ranger, while it was still open and transacting business, a draft or banker's check, drawn by the cashier on the National Reserve Bank of Kansas City, Missouri, for $2200.00. Estes was not a depositor of the bank, and had never

been, and the draft when purchased was paid for, not by a check on the bank itself, but in cash.

Payment of the draft was refused by the Kansas City bank, for the reason that after its issuance, and before presentation, the Ranger bank had failed and been taken over by the Commissioner of Banking. Proof of claim based upon this draft was presented to the Commissioner who refused to allow it, either as a general or secured deposit claim.

We, therefore, are not concerned with, nor will this opinion pass upon, the jurisdictional or any other question presented by a claim approved as against the bank, but rejected as against the Guaranty Fund.

We have concluded that the mandamus can not issue against the Commissioner of Banking in this case for three reasons: (1) because we have no jurisdiction to compel the Commissioner to allow the claim against the insolvent bank; (2) because the relator has a plain, adequate, and effective remedy at law; and (3) because the facts do not show that the claim is based upon or represents a non-interest-bearing and unsecured deposit, payable out of the Guaranty Fund.

We will first discuss the question of jurisdiction.

Revised Statutes, Article 464, requires the presentation of all claims against an insolvent bank to the Commissioner, makes it his duty to reject those "the justice and validity of which" are doubted by him, and authorizes an "*action*" on the rejected claims.

The statute does not in express terms provide that the action authorized must be brought in the District Court of the county where the bank had its domicile, but we believe this to be the proper construction, in view of the effect which must be given to other Articles of the statute relative to liquidation proceedings. It is likewise clear that the purpose of the various Articles touching the control and disposition of the insolvent estate is to place it in custodia legis, and therefore in effect to designate the court administering the estate as the one in which contested actions must be brought.

We will consider some of the statutes on which these conclusions are based.

One of the Articles requiring action by the District Court particularly names the District Court of the County of the bank's domicile (R. S., Art. 458), while others merely name the "District Court", or "Court", or the "District Court of the District" where the bank was located. (R. S., Arts. 467, 469, 471, 472, 473, 475, 478, 482). These Articles were all a part of Section 9, Chapter 15, 2nd S. S., Acts of 1909, and construed in the light of their context, and manifest purpose of the Legislature, all refer to the same court,—that is, to the District Court of the county where the bank was located.

Or, if we should say that the effect of the statutes was to fix jurisdiction in the District Court of the district in which the bank is located, without naming the county, then the general venue statutes localize and fix that venue in the District Court of the county where the bank had its domicile, since all the orders required of the court are either against the bank or affect its property and rights. Revised Statutes, Article 1830.

We will now discuss the effect of these statutes on the question of the venue of the action authorized by Article 464.

In the compounding of debts, sale and disposition of all personal and real property of the insolvent bank, in the payment of expenses and dividends, and in the disposition of the residue of the estate after the settlement of all debts, the Commissioner must have an order of the District Court, or of the judge of that court. Revised Statutes, Articles 458, 467, 469, 478, 475.

Unproved or unclaimed deposits or assets not disposed of in the course of liquidation remain subject ultimately and finally to the disposition of the District Court, or Judge. Revised Statutes, Articles 472, 480, 482.

When a claim has been approved by the commissioner, it may be contested by interested parties only in the District Court. Revised Statutes, Article 471.

Articles 460 and 466, while not referring to court orders, do indicate a purpose to localize the liquidation proceedings.

From a consideration of all the Articles named, it is quite apparent that every feature of the distribution of the estate of an insolvent bank is within the jurisdiction of the District Court (or Judge thereof) of the county in which the bank was located when it transacted business.

Article 464, which authorizes an action on rejected claims, does not specify the court in which the action is to be brought; but the fact that this Article is a part of Section 9, Chapter 15, Acts of 1909, above referred to, is strongly suggestive, if not conclusive, that the action contemplated is to be in the District Court named in the other portions of the Section,—that is, the District Court of the county of the bank's domicile.

Again, it is clear from Articles 471 and 469 that where objections are made to claims allowed by the commissioner, the contest must be in the District Court, regardless of the amount involved. It is entirely consistent with general purposes of the Act to say that contests for the establishment of rejected claims must likewise be brought in that court. We know of no reason why the Legislature should have permitted contests of approved claims in one court, and have prescribed another court for actions to establish rejected claims.

Power to hear contests of all allowed claims could only be conferred upon the District Court, by reason of that court having been given jurisdiction of the entire subject matter of the liquidation and the custody of the property involved. In addition, decisions from other States support the view that the property is in custodia legis.

The liquidation sections of the Banking Acts of New York, Alabama, Mississippi, and Wisconsin do not materially differ from our own laws. Birdseye's Consolidated Laws of New York, Vol. 1, pp. 509 to 526; General Acts of Alabama, 1911, pp. 60 to 67; Hemmingway's Annotated Miss. Code, Article 3623, pp. 1861, 1864; Olson's Oregon Laws (1920), Section 6223; Wisconsin Statutes (Official 1913), Section 2022.

The New York courts hold that the Superintendent of Banks is in effect a statutory receiver and arm of the court in administering the estate of an insolvent bank. In re Union Bank of Brooklyn, 161 N. Y. Supp., 29, 36, 96 Misc., 299; In re Union Bank of Brooklyn, 204 N. Y., 313, 316, 97 N. E., 737; Van Tuyl v. Scharmann, 208 N. Y., 62, 101 N. E., 799, 782; In re Bank of Cuba in New York, 191 N. Y. Supp., 88; In re Carnegie Trust Co., 161 App. Div., 280, 146 N. Y. Supp., 809; Richards, Supt. of Banks, v. Robbin, 178 App. Div. 535, 165 N. Y. Supp., 780.

In Alabama he is an agent or receiver of the court administering the insolvent estate. Walker, State Supt. of Banks, v. Mutual Alliance Trust Co., 196 Ala., 154, 71 So., (Ala.) 697, 698; Walker, Supt. of Banks, v. McCrary Co. 197 Ala., 638, 73 So. (Ala.) 342; Montgomery Bank & Trust Co. v. Walker, Supt. of Banks, 181 Ala., 368, 61 So. (Ala.) 591.

In Mississippi the property of an insolvent bank in the hands of the Bank Examiners, who correspond in authority to our Commissioner, is in the hands of a receiver and in custodia legis. Anderson et al., Bank Examiners, v. Owen, 112 Miss., 476, 73 So., 286.

In Oregon the property of an insolvent bank is referred to as being administered by the court, and suits on rejected claims are brought with the permission of the court. Steelhemmer & Doxie v. Bramwell, Supt. of Banks, 209 Pac., 100, 106; Upham v. Bramwell, 210 Pac., 706, 709.

In Wisconsin the trial court has general supervisory control over the liquidation proceedings, with authority, in the absence of a statute, and upon proper showing, to grant permission to file a claim after the expiration of the time originally fixed by the commissioner. Wisconsin Trust Co. v. Cousins, Bank Commissioner, 172 Wis., 486, 179 N. W., 801, 806.

The necessary effect of all the foregoing cases is that the property of the insolvent bank is in custodia legis. Under assignment statutes somewhat similar to our banking laws, the insolvent estate is in cus-

todia legis. Hanchett v. Waterbury, 115 Ill., 220, 32 N. E. (Ill.) 194, 196; In the Matter of Henry E. Mann, 32 Minn., 60, 19 N. W., 347.

Since the property of the insolvent bank is in custodia legis, the fact that Article 464 authorizes an action in general terms, without specifying the court, necessarily refers to an action in the court having custody of the estate. Citizens Savings Bank v. Ingham, 98 Mich., 173, 57 N. W., 121.

We conclude that the District Court of the county where the bank was located is the court in which all actions for the establishment of rejected claims against the insolvent bank must be brought, regardless of contractual venue or jurisdictional amount; such actions to be either by intervention in the liquidation proceedings or by petition in that court.

Having concluded that the action on a rejected claim against an insolvent bank, authorized by Article 464, is one in the District Court of the county where the bank was located, it follows that it is not one by mandamus in the Supreme Court.

Again, all actions brought under Article 464 for the establishment of claims against the bank necessarily involve questions of fact, which, in the first instance, must be passed on by the Commissioner; and in doing so he must exercise judgment and discretion. We, therefore have no jurisdiction to revise his action by mandamus. Edwards v. Terrell, 100 Texas, 26, 93 S. W., 426; Davis v. Terrell, 100 Texas, 291, 99 S. W., 404; Schell v. Terrell, 100 Texas, 585, 102 S. W., 109; Teat v. McGauhey, 85 Texas, 478, 22 S. W., 302; Arberry v. Beavers, 6 Texas, 457, 55 Am. Dec., 791; McFall v. State Bank, 101 Texas, 572, 110 S. W., 739; Ewing v. Cohen, 63 Texas, 482; 12 Michie's Digest, pp. 99 to 101.

It follows, also, from what has been stated, that the relator has, under Article 464, a plain, adequate, legal remedy for the establishment, and, in connection therewith, the classification of his claim by the District Court administering the insolvent estate. Having such remedy, it is elementary that a mandamus will not issue out of this court. Screwman Benevolent Ass'n v. Benson, 76 Texas, 552, 555, 13 S. W., 379; Hume v. Schintz, 90 Texas, 72, 36 S. W., 429; Jackson v. Swayne, 92 Texas, 242, 246, 47 S. W. 711; Ewing v. Cohen, 63 Texas, 482, 485; 26 Cyc, 168 to 172.

Aside, however, from the technical question of jurisdiction, it is plain relator's claim is not based upon a noninterest-bearing and unsecured deposit, the only class of obligations protected by the Depositors' Guaranty Fund. Revised Statutes, Article 486.

The word "depositors" is to be given its generally accepted and understood meaning. 7 Corpus Juris, p. 485; Lankford v. Schroeder, 47 Okla., 279, L. R. A., 1915F, 623, 147 Pac., 1049, 1053; Critchfield v. Nance County, 77 Neb., 807, 110 N. W., 538.

A depositor is one who delivers to or leaves with a bank money, or checks or drafts, the commercial equivalent of money, subject to his order, and by virtue of which action the title to the money passes to the bank. 2 Michie on Banks and Banking, pp. 887 to 890, pp. 908, 909, and notes; Fleming v. State, 62 Texas Crim., 653, 139 S. W., 598, 600; Lankford v. Schroeder, 47 Okla., 279, L. R. A., 1915F, 623, 147 Pac., 1049, 1052 (Okla.); State v. Corning State Bank, 136 Iowa, 179, 113 N. W., 500, 502, (Iowa).

Various distinctions may be noted between the relationship created by the issuance and sale of a draft, and the receipt of a deposit by a bank. In the case of a deposit, the money is placed in the bank in reality for the benefit of the depositor (Elliott v. Capital City State Bank, 128 Iowa, 275, 111 Am. St., 198, 1 L. R. A. (N. S.) 1130, 1134); while in the sale of a draft, the transaction is for the benefit of the bank making the sale.

When a deposit is made, the bank receives assets, and the depositor has a direct claim against the bank,—the relationship is one of primary liability, directly on the contract; while in the issuance of a draft, the bank sells assets, and the primary liability is that of the bank against which it is drawn, and the issuing bank is not liable until payment has been refused by the drawee bank. See Texas Negotiable Instruments Act, Articles 5 to 8; Vernon's Sayles' Supplement (1922), Vol. 2, pp. 1772 to 1779; Harper v. Winfield State Bank, 173 S. W., 627.

Another illustration may be given. Take the instance where money, belonging to another than the one making the deposit, is placed in a bank without the consent of the owner. In such a case the relation of banker and depositor is not created, the bank does not take title to the fund, and, regardless of the innocent purposes of the bank, it is guilty of conversion. 2 Michie on Banks and Banking, pp. 897, 898, 899; Winslow v. Harriman Iron Co., 42 S. W., 698, 699, (Tenn.); Mingus v. Bank of Ethel, 136 Mo. App., 407, 117 S. W., 683, 685, (Mo.); Board of Fire and Water Commissioners v. Wilkinson, 119 Mich., 655, 78 N. W., 893, 44 L. R. A. 493; Patek v. Patek, 166 Mich. 446, 35 L. R. A. (N. S.), 461, 131 N. W., 1131; See also Wilson v. Wichita Co., 67 Texas, 647, 4 S. W., 67, and 3 Rose's Notes on Texas Rep., p. 810, and 1913 Supplement, p. 548.

On the other hand, if one having the money of another goes to a bank and purchases a draft, and the bank innocently receives the money and issues a valid draft therefor, the bank becomes the owner of the money paid for the draft, regardless of the title which the purchaser may have had to the funds. Oklahoma State Bank v. Bank of Central Arkansas, 120 Ark., 369, 179 S. W., 509, 511; First National Bank v. Gilbert, 123 La., 845, 131 Am. St., 382, 49 So., 593, 25 L. R. A., (N. S.) 631, and cases cited in notes; State Bank v.

United States, 114 U. S., 401; 29 L. Ed., 149; Holly v. Missionary Society, 180 U. S., 284, 293, 45 L. Ed., 531; 27 Cyc., pp. 863, 865.

These illustrations show a clear disinction between the obligations and rights which arise from contracts of deposit and of sale and purchase of drafts. Others might be stated, but we deem it un-necessary.

Counsel for relator insist that the so-called "cashier's check" in-volved in this action is analogous to a certificate of deposit, under the Negotiable Instruments Law; and since a certificate, if representing a noninterest-bearing and unsecured deposit, is secured by the Guar-anty Fund, the instrument here involved is likewise payable out of that fund.

The Depositors' Guaranty Fund Act is to be interpreted and con-strued by its own language and that of the Constitution, and not by the Negotiable Instruments Act. The contention that a cashier's check and a certificate of deposit are analogous in origin and legal effect, and that both presuppose a deposit of money, is without merit. A draft or cashier's check does not presuppose any deposit of money, and in the instant case no deposit was made. The money received from the sale of a draft is not within the usual definition of a deposit.

The power to issue drafts or bills of exchange is a distinct, sepa-rate, and entirely different power from that of receiving deposits. Our statutes separately name these two powers. Revised Statutes, Article 376. This division is as old as modern banking, which orig-inated in banks of exchange only in mediaeval times. See generally the article on Banks and Banking in the 11th Edition of the Ency-clopaedia Brittanica.

The case of Middlekauff v. State Banking Board, 111 Texas, 561, 567, 242 S. W., 442, is not in point in this case, for the reason that here there was no deposit made the basis of or out of which the worth-less draft was purchased.

Relator illustrates his position by stating, in effect, that had Estes placed his money in the bank and taken a negotiable certificate of deposit therefor, or had immediately given his check against such deposit, instead of paying for the draft in money, the claim here in-volved would be protected by the Guaranty Fund.

We do not agree to either of these propositions. If Estes in good faith had become a depositor, and received a certificate of deposit, he would be protected; or if with his check against an actual deposit, made in good faith, he had purchased a cashier's check such as was involved in the Middlekauff Case, or a draft, which proved worth-less,—then the original deposit, not the check or draft, would have been protected. But in the instances suggested the deposit would not have been made in good faith with the intention of creating in fact a deposit contract, but for the purpose of obtaining a cashier's

check, bill of exchange, or negotiable certificate of deposit, and placing the Guaranty Fund behind a piece of commercial paper. Such a simulated transaction would not have created a deposit within the meaning of the Guaranty Fund Law. The law will look through all semblances and forms to ascertain the actual fact as to whether or not there has been a bonafide deposit made; and if not, the Guaranty Fund does not protect the transaction, no matter how it may be evidenced. The Guaranty Fund does not guarantee the integrity of the evidences of a deposit, such as a certificate, *but only the deposit itself*. State ex rel. Carroll v. Corning State Bank, 136 Iowa, 179, 113 N. W., 500; American State Bank v. Wilson, 110 Kan., 520, 204 Pac., 709; Fourth National Bank v. Wilson, 110 Kan., 380, 204 Pac., 715; Widman v. Kellogg, 22 N. D., 396, 39 L. R. A. (N. S.) 563, 133 N. W., 1020.

It is plain that relator's claim is not based upon a deposit in the insolvent bank, and therefore is not payable out of the Guaranty Fund.

Relator's claim not being payable out of the Depositors' Guaranty Fund, the State Banking Board as such has no duty to perform relative thereto; therefore mandamus will not be awarded against it.

Since the status of the claim as herein set forth appears on the face of the petition for mandamus, we should not, in the first instance, have granted leave to file it; and it is, for the reasons stated in this opinion, accordingly dismissed.