## FIRST NAT. BANK OF AMARILLO v. BURSON et al.

## No. 3971.

Court of Civil Appeals of Texas. Amarillo.
Sept. 13, 1933.

Madden, Adkins, Pipkin & Keffer, of Amarillo, for appellant.

J. R. Porter, of Clarendon, for appellee Burson.

HALL, Chief Justice.

This is an appeal by the First National Bank from an order of the district court of Floyd county, overruling its plea of privilege to be sued in Potter county.

On July 8, 1931, Burson sold his wheat to the Farmers' Grain Company of Silverton, Briscoe county, Tex., and received in payment therefor the grain company's check in the sum of $2,012.90, drawn on the First National Bank of Lockney, in Floyd county. The next day Burson forwarded said check to the Donley County State Bank at Clarendon, Tex., for credit, and on the 10th day of July the Donley County State Bank forwarded the check for collection to its correspondent in Amarillo, the First National Bank. The First National Bank in turn forwarded said check to its correspondent, the Security State Bank at Lockney, on July 11th, for collection and return, accompanied by cash letter as follows: "We enclose for return items as listed herein. Return promptly if not honored. Deliver documents only on payment of items to which they are attached. Do not protest items bearing this stamp: No. Pro. or the similar stamp of a preceding endorser or items $20.00 or under. Wire non-payment items $500.00 or over."

The letter was signed by the cashier of the First National Bank. Among the items referred to in the letter was, as stated above, Burson's check for $2,012.90. On the 13th day of July, when the Security State Bank received said check with other items for collection, said bank cleared with the First National Bank of Lockney. The clearance between the two banks showed a total of $3,321.02, which was paid as follows: $610.60 in checks held by the First National Bank of Lockney against the Security State Bank were canceled by the clearing house agreement; $400 was paid by the First National Bank to the Security State Bank in cash and the First National Bank issued to the Security Bank its draft on the Fort Worth National Bank in the sum of $2,310.42. The Farmers' Grain Company, which issued the check to Burson, had on deposit in the First National Bank of Lockney sufficient funds with which to protect the check. On the 13th day of July, 1931, the Security State Bank remitted to the First National Bank of Amarillo, according to the mutual agreement of said banks, by draft on itself the sum of $3,594.73, which draft included the Burson check. Plaintiff alleges in his petition that on the 14th day of July the draft was received and the First National Bank credited the Donley State Bank's account as of July 11th with the amount of the Burson check and that said credit was made for the purpose of paying plaintiff's check. That the Security State Bank was open, doing business during the date of July 14th, but failed to open for business on the morning of July 15th. That the state banking examiner, about 8 o'clock on that morning, wired all correspondent banks to stop payment on all exchange and drafts, and on the 17th day of July the First National Bank of Amarillo charged the Donley County State Bank with the amount of said draft. The plaintiff further alleges the insolvency of the Security State Bank and that it was in a precarious financial condition and insolvent on all days and dates before alleged. That its affairs are now being wound up by the banking department of the state under the direction of James Shaw, commissioner. It is further alleged that on July 13th the Security State Bank forwarded to the defendant Continental National Bank at Fort Worth various items for collection and credit, among which was the draft on the First National Bank of Lockney, drawn on the Fort Worth National Bank, in the sum of $2,310.42. The letter transmitting said items is as follows: "We enclose for credit items as listed hereon. Return promptly if not honored. Deliver documents only on payment of items to which they are attached. Wire nonpayment of items $500.00 or over. Do not protest items of $10.00 or those marked 'N–P.'"

It is alleged that said letter reached Fort Worth about 7 o'clock July 15th. That pay-

ment on said draft should have been stopped in accordance with the bank examiner's telegraphic instructions sent from Lockney at 8 o'clock a. m. on said day to said Continental Bank. That the presentation and collection of the draft was not made until after banking hours on July 15th and until after the Continental Bank learned of the insolvency of the Security State Bank and after said last-named bank had been closed by the said bank examiner.

Plaintiff alleges that by reason of having deposited his check in the Donley County Bank and said bank in due course having forwarded the check to its correspondent, the First National Bank, for collection and return, said last-named bank became the agent of the plaintiff for collection and return, and when the First National Bank of Amarillo forwarded said check to the Security State Bank, said last-named bank also became the agent of plaintiff. That when said bank collected the amount of the check, the money became a trust fund in the hands of the Security State Bank for the benefit of plaintiff. It is further alleged that at the time the Security State Bank received the check from the First National Bank of Amarillo, said first-named bank was insolvent and mingled the proceeds of its general assets with the money received upon plaintiff's check, which results in said bank being the trustee of the fund for plaintiff's benefit. That by reason of the premises plaintiff has a preference claim against said Security State Bank. That the state banking examiner refuses to recognize plaintiff's claim as a preference claim as against said insolvent bank or to admit that said insolvent bank became the trustee of the fund for plaintiff's benefit.

The substance of plaintiff's complaint against the First National Bank we briefly state as follows: That said bank sent plaintiff's check to the Security State Bank for collection when it knew that the Security State Bank was in financial distress, that unusually heavy withdrawals from said bank had been made by its depositors for ten days or two weeks, and knew that said bank was threatened with insolvency and was about to be closed by the banking department. That said First National Bank was negligent in selecting its correspondent, and such act of negligence by the defendant the First National Bank was committed in Lockney, Floyd county, by causing plaintiff's check to be delivered to defendant Security State Bank, and that by reason of such negligence defendant First National Bank of Amarillo is liable to plaintiff for the sum due. That said First National Bank knew that the Security State Bank was insolvent when it forwarded said check for collection, or was in possession of information sufficient to put a reasonably prudent person on notice of its insolvency. That it knew that remittance of the amount collect-

ed would, of necessity, have to be made by draft upon the Security Bank; that after the First National Bank had become the agent of the plaintiff for collecting the check, it was informed by one Meriwether, one of the officers of the Security Bank, on Sunday before said check reached said Security Bank, that runs had been made on said bank for a number of days; that its depositors in unusual numbers and amounts had been withdrawing their funds. That at the time the First National Bank received such information, both banks at Lockney, Tex., were closed on account of there being a legal holiday, and the First National Bank knew that neither bank would open before 9 o'clock on the following Monday and, although the officers of said bank knew that the check was in unsafe hands and knew they could stop payment by wiring the First National Bank of Lockney not to pay the same, it violated its duty to plaintiff and failed to wire said First National Bank of Lockney and failed to wire the Security State Bank not to collect said check and failed to notify the Security Bank to return said check; in all of which matters it was grossly negligent, which resulted in the loss to plaintiff of the value of said check. That it was negligent in accepting the draft of the Security State Bank in payment of said check instead of collecting the same in money. That said bank failed to use due diligence in collecting said check, and by reason of its negligence plaintiff has been damaged in the sum of $2,012.90.

In his petition plaintiff sets out the facts with reference to the draft sent by the Security State Bank to the Continental National Bank and prays for judgment against said last-named bank, charging fraud in the transaction and seeking to hold the Continental National Bank as trustee.

By his allegations the plaintiff endeavors to show that the district court of Floyd county had jurisdiction to try the issues as to all defendants under subdivisions 4, 23, 29a, and 30 of article 1995, and under article 369a (Vernon's Ann. Civ. St.).

In reply to the plea of privilege filed by the First National Bank of Amarillo, plaintiff filed his controverting affidavit restating therein all the grounds alleged in his petition as reasons why the plea of privilege should be overruled, and as additional grounds the facts in Shaw's answer.

On May 16, 1932, and several days after the appellant bank had filed its plea of privilege, the defendant James Shaw, as banking commissioner, filed his answer, alleging, among other things, that plaintiff was asserting a claim against him and the Security State Bank as a preferred claim; that the First National Bank of Amarillo had presented to the bank examiner claims against the insolvent Security State Bank as preferred claims; that other persons residing in Floyd

county had presented what they asserted to be preferred claims, all in, the total sum of approximately $1,100. He tendered; said amount into court and asked that all parties asserting preferred claims, including the First National Bank, be made parties to the suit and that the court administer the funds so tendered in the payment of preferred claims, if they were really entitled to a preference.

The appellant's brief is devoted to attacking the findings and conclusions of the trial judge. The principal contention is that the court based the findings and conclusions upon matters which do not appear in the petition. This is unquestionably correct.

It is clear from the findings of fact and the judgment that the court's action in overruling the plea of privilege was based upon facts set up in Shaw's answer and not facts alleged in the petition. Shaw filed his answer several days after the appellant had filed its plea of privilege, in which he alleges that several claims have been filed by creditors of the bank, including that by the appellant, in which the claimants insist they are entitled to preference. He further says that he has about $1,100 on hand out of which preference claims may be paid, and as a stakeholder asks that the First National Bank and other claimants be made parties in order that he may be protected from double recoveries. In addition to the facts alleged in .his petition, Burson in his controverting affidavit sets out the facts alleged by Shaw.

It seems to be held, as contended by appellant, that a ground of venue or jurisdiction stated in the controverting affidavit which does not appear in the petition will not defeat the plea of privilege. Browne v. Heid, Bros. (Tex. Civ. App.) 12 S.W.(2d) 587; Witting v. Towns (Tex. Civ. App.) 265 S. W. 410; Jones v. Caldwell (Tex. Civ. App.) 42 S.W.(2d) 1052.

█ Nevertheless, it is the duty of this court to affirm the judgment if it can be sustained upon any ground supported by the record, regardless of the error committed by the trial court in basing its ruling upon the facts set up in Shaw's answer. Harrell v. City of Lufkin (Tex. Com. App.) 280 S. W. 174; Benavides v. Garcia (Tex. Com. App.) .290 S. W. 739; Phillips Petroleum Co. v. Booles (Tex. Com. App.) 276 S. W. 667; 3 Tex. Jur. 1129, § 792.

We are of the opinion that the court did not err in overruling the plea of privilege, although his action is based upon an incorrect ground. The appellee contends, in part, that the court's action is correct because all suits against insolvent banks must be brought in the counties where such banks are located. This is true when the purpose of the suit is to establish a claim which has been disallowed by the banking commissioner. Kid-

der v. Hall, 113 Tex. 49, 251 S. W. 497; Innes v. State Banking Board, 113 Tex. 300, 254 S. W. 117, 118; Hall v. Eastland County (Tex. Civ. App.) 254 S. W. 1113, 1114.

█ It is possible that the court's order may be justified under the provisions of Court of Civil Appeals Rule No. 62a, but we do not affirm the judgment upon that ground. We think under the general statute, article 1995, subdivisions 4 and 23, the court correctly overruled the plea. Subdivision 4 provides. in part:· "If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides." And subdivision 23 provides that a suit against ·a private corporation may be brought in any county in which the cause of action or a part thereof arose. The rule which forbids a multiplicity of suits, which is applied in Texas with particular force (1 Tex. Jur. 639), supports the court's action in this case.

As said in 1 Tex. Jur. 640: "The general doctrine in this respect has been said to be that the rights of all parties in the subject-matter of litigation and all matters growing out of the same transaction should be settled in one suit."

"Although certain causes might be tried separately, it is proper to unite them if the rights of the parties and the transactions involved are so interwoven that they may conveniently be settled in one action.

"The right to join causes of action is said to depend on whether the court ·can grant full relief under the particular circumstances involved and whether the diverse nature of the defenses which would naturally be interposed to the various causes of action would suggest the propriety of keeping them apart. The subject-matter of the suits, rather than the suits themselves, is the 'transaction' embraced in the test of multifariousness. The subject-matter may relate to or be different parts of the same transaction, or the subject-matter of one suit may include, as a part of it, the whole of the subject-matter of the other.

"Under the foregoing rules when joinder is permissible a petition may properly incorporate two or more causes against a single defendant or against several defendants where the causes of action are common to all the defendants and may be enforced by the same plaintiff." Id. p. 645, § 36.

In section 37, the same writer says: "It is settled that several causes of action, though technically separate and distinct, may properly be united in one suit when they arise out of the same transaction or are so connected with the same subject-matter as to authorize their litigation in a single suit. Objections to joinder which would be well taken under a system having forms of action will

not prevail in Texas in those cases where the facts or matters relied on are connected with or grow out of the same transaction or subject-matter of dispute. On the contrary all matters necessarily connected with and incident to a cause of action should be pleaded and adjudicated in one controversy, so as to prevent more than one suit from growing out of the same subject-matter. * * * and it applies although one of the causes of action is for breach of contract and the other for tort. Under this rule it has been held that causes may be joined where the issues are based upon a common interest or where the causes are based on injuries having a common origin."

Burson's action against the insolvent bank and his action against Shaw, as well as his alleged right to recover against the appellant, the First National Bank of Amarillo, unquestionably grew out of the same transaction. The subject-matter of his suit is the check which he received for his wheat and the money which the insolvent bank collected from the drawee bank, which fund he alleges has been lost to him through the negligence of the appellant bank. By interpleading other creditors of the insolvent bank, Shaw cannot be permitted to defeat Burson's right to maintain his action against the three defendants named in his petition. The suit may be maintained without inconvenience to any one, and Burson's right to recover against the First National Bank for its negligence and against the insolvent bank is simply the suit of a principal against two agents whom he alleges have been derelict in the performance of their duties. Citizens' National Bank of Abilene v. Overstreet (Tex. Civ. App.) 46 S.W.(2d) 409, 410; Tillman County Bank v. Behringer, 113 Tex. 415, 257 S. W. 206, 36 A. L. R. 1302; Mercantile Bank & Trust Co. v. Schuhart, 115 Tex. 114, 277 S. W. 621; Barton v. Farmers' State Bank (Tex. Com. App.) 276 S. W. 177; Pickering Lumber Co. v. City National Bank & Trust Co. (Tex. Civ. App.) 48 S.W.(2d) 673.

The issue here involved has been so often decided in this state that a further discussion of it is unnecessary. Farmers' National Bank of Center v. Merchants' National Bank of Houston (Tex. Civ. App.) 136 S. W. 1120; Threadgill v. Federal Land Bank (Tex. Civ. App.) 26 S.W.(2d) 345; Daughtry v. Blanket State Bank (Tex. Civ. App.) 41 S.W.(2d) 527; Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423; Adams v. First National Bank (Tex. Civ. App.) 178 S. W. 993; National Surety Co. v. Atascosa Ice, Water & Light Co. (Tex. Civ. App.) 222 S. W. 597; Commercial National Bank v. First National Bank (Tex. Civ. App.) 77 S. W. 239; Zane-Cetti v. City of Fort Worth (Tex. Civ. App.) 21 S.W.(2d) 355; Mercantile Bank & Trust Co. v. Schuhart, 115 Tex. 114, 277 S. W. 621; Id. (Tex. Civ. App.)

277 S. W. 1087; Labor Bank & Trust Co. v. Adams (Tex. Civ. App.) 23 S.W.(2d) 814; First National Bank v. Neel (Tex. Civ. App.) 10 S.W.(2d) 408.

The judgment is affirmed.

MARTIN, J., disqualified.