LARSON, Respondent, vs. BANKING COMMISSION, Defendant: FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant.

*February 8—March 9, 1937.*

*William Ryan* of Madison, for the appellant.
*Martin J. Price* of Milwaukee, for the respondent.

ROSENBERRY, C. J. The contention of the defendant. Federal Deposit Insurance Corporation, hereinafter referred

to as "F. D. I. C.," is that the plaintiff was not a depositor; that in the transaction of May 22, 1935, the parties treated the check delivered by the plaintiff to the bank as cash; that the cashier's check for $300 was merely a sale of the credit of the bank; that the liability created was the equivalent of that created by the giving of a promissory note by the bank. The fact that the transaction between the plaintiff and the bank took the form that it did instead of having the whole amount deposited to the credit of the plaintiff, then having her draw checks for the amount of cash she desired and for the amount of the cashier's check is a difference in form rather than in substance.

Defendant relies very strongly upon *Kidder v. Hall* (1923), 113 Tex. 49, 251 S. W. 497, 499. In that case one Estes purchased from the Farmers' & Merchants' State Bank of Ranger a draft drawn by the cashier on the National Reserve Bank of Kansas City, Missouri, for $2,200. Estes was not a depositor and paid cash for the draft. It does not appear to whom the draft was payable nor how it was indorsed. When payment was demanded from the Kansas City bank, it was refused, for the reason that the drawing bank had closed its doors in the meantime. It is clear from the facts stated in the case of *Kidder v. Hall* that the draft was purchased for the purpose of transmitting funds.

The only obligations protected by the Depositors' Guaranty Fund of Texas were those based upon a noninterest-bearing unsecured deposit. The court defined a depositor as follows:

"A depositor is one who delivers to or leaves with a bank money, or checks or drafts, the commercial equivalent of money, subject to his order, and by virtue of which action the title to the money passes to the bank."

The definition of a depositor by the Texas court seems to define exactly the relation between the plaintiff and the bank

after the transaction of May 22d. Plaintiff did not purchase the cashier's check for the purpose of transmitting funds. She accepted it as an evidence of the bank's indebtedness to her on account of funds, the title to which passed to the bank. The cashier's check was not made payable to a third person, not drawn on a distant bank. While the cashier's check is a negotiable instrument, when negotiated, the deposit represented by the check passes to the credit of the checkholder, who is thereafter a depositor to that amount. *Lummus Cotton Gin Co. v. Walker* (1916), 195 Ala. 552, 70 So. 754.

We are unable to distinguish so far as its legal effect is concerned the instrument issued by the bank to the plaintiff from an ordinary certificate of deposit, payable on demand, which does not bear interest. The cashier's check in this case was nothing more nor less than a promise to pay plaintiff or her order the amount of her deposit upon demand. This case is readily distinguishable from the case of *Kidder v. Hall, supra.* There the intent of the parties was not the safekeeping of funds but a transfer of funds from one point to another. Whether we concur in the view of the Texas court upon that aspect of the case, certainly the decision in *Kidder v. Hall* is not authority for the defendants' position in this case. It appears here without dispute that thirty days after the cashier's check was issued it was still in the possession of the plaintiff. In the meantime she was a depositor within the meaning of the federal statute and the liability of the bank to her was a "deposit liability."

The liability of the F. D. I. C. does not depend upon whether the instrument in question created the relation of debtor and creditor but upon the meaning of the term "deposit liability." As ordinarily used, a "deposit" is created by the leaving of funds with a bank for safekeeping until such time as payment shall be demanded in accordance with the terms of the document issued to the depositor. The pur-

chase of a draft to enable a purchaser to transmit funds is not ordinarily thought of as a deposit, and the resulting liability is ordinarily not considered a deposit liability, but where, as here, the customer of the bank leaves funds in the possession of the bank for safekeeping, takes from the bank evidence of the deposit which discloses an agreement that the bank will pay the same upon demand to the customer or her order, there would seem to be no question but that the liability created comes clearly within the term "deposit liability."

*By the Court.*—Judgment affirmed.