## TYLER COUNTY STATE BANK et al. v. SEABOARD STATE BANK & TRUST CO. (No. 1023.)

(Court of Civil Appeals of Texas.    Beaumont. Jan. 5, 1924.    Rehearing Denied Jan. 30, 1924.)

1. **Banks and banking** ⬦15—**Essentials of "deposit" of money coming within depositors' guaranty fund stated.**

To create a "deposit" within Rev. St. art. 486, relating to depositors' guaranty fund, money or its equivalent must, in intention and effect, be placed at command of the bank, title to which passes to the bank, and for which depositor has credit on the books as a cash deposit, creating relation of debtor and creditor between depositor and bank.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deposit.]

2. **Banks and banking** ⬦15—**Obligation of bank under guaranty to pay notes not within depositor's guaranty statute; "depositor."**

Where plaintiff bank *held* notes guaranteed by defendant bank and at maturity sent them to defendant for collection and thereafter refused a note offered in renewal, and when defendant bank failed the notes were found in the private file of its cashier and had not been placed in the bank nor credit given plaintiff, and no agreement was shown that if notes were not paid at maturity plaintiff would receive credit on defendant's books, charging of the amount against defendant on plaintiff's books did not change the relation of principal and agent, and the transaction did not constitute plaintiff a "depositor" within Rev. St. art. 486, relating to depositors' guaranty fund.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Depositor.]

Appeal from District Court, Tyler County; J. M. Combs, Judge.

Action by the Seaboard State Bank & Trust Company against the Tyler County State Bank and another. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Walace Hawkins and Jno. W. Goodwin, Asst. Attys. Gen., for appellant.

A. W. Dycus and Robert A. Shivers, both of Port Arthur, for appellee.

O'QUINN, J. Suit by the Seaboard State Bank & Trust Company against the Tyler County State Bank and J. L. Chapman, commissioner of insurance and banking, to establish its claim in the sum of $5,000 against the Tyler County State Bank, and to have said claim classified as a noninterest bearing and unsecured claim and payable out of the depositors' guaranty fund.

Appellee alleged that on January 28, 1921, the appellant Tyler County State Bank forwarded to appellee two notes of the Zavalla Lumber Company for the sum of $2,500 each, due and payable 40 days after date, and at the same time guaranteed the payment of said notes, and on said day and date drew a draft on appellee for $5,000, and charged said amount to appellee on its books; that on the 29th day of January, 1921, appellee accepted said notes under said guaranty and credited the appellant Tyler County State Bank with the sum of $5,000; that on March 11, 1921, the two notes of the Zavalla Lumber Company so guaranteed by said appellant Tyler County State Bank, being past due and unpaid, were by appellee charged back to said bank, and said notes and the collateral attached to same were, on said date, returned to the appellant Tyler County State Bank, and by it accepted; that on March 14, 1921, the appellant Tyler County State Bank undertook to make a new contract with appellee and on said date forwarded to appellee another note of the Zavalla Lumber Company for the sum of $5,000, due and payable 30 days after date, with collateral therewith, which were rejected by appellee and returned, together with the collateral security, to the said Tyler County State Bank; that it (appellee) was entitled to a credit on the books of said Tyler County State Bank in the sum of $5,000 more than it had received credit for, and that said credit was noninterest-bearing and unsecured, and was protected by the guaranty fund. Appellee further alleged that appellant the Tyler County State Bank accepted and received the benefits of said $5,000 under the contract of guaranty, and that same went into the assets of said Tyler County State Bank, and prayed that it have judgment establishing its claim of credit with the Tyler County State Bank in the sum of $5,000, and that same be classified as on a checking account, and that same be paid out of the guaranty fund.

The defendant appellant J. L. Chapman, commissioner of insurance and banking, answered by several special pleas, general demurrer, special demurrer to the effect that the claim sued upon, as shown by plaintiff's petition, was not a deposit by appellee in the Tyler County State Bank, but was a debt, and by general denial.

The defendant Tyler County State Bank adopted the answer of the defendant J. L. Chapman.

The case was tried before the court without a jury, and judgment rendered in favor of appellee against the Tyler County State Bank for the sum of $5,000, and established the claim as a noninterest-bearing and unsecured deposit, and that same should be paid out of the guaranty fund, and that judgment be certified to the commissioner of insurance and banking for observance.

The record discloses that the Tyler County State Bank ceased to do business on March 28, 1921, and was taken in charge by the commissioner of insurance and banking for liquidation. E. A. Dismuke was cashier of the Tyler County State Bank, and at the same time was treasurer and a director of the Zavalla Lumber Company, a corporation doing a lumber business. On January 28, 1921, the Tyler County State Bank and the Seaboard State Bank & Trust Company were correspondents. On said date the Seaboard State Bank & Trust Company had on deposit with the Tyler County State Bank the sum of $34,660.25. On January 28, 1921, the Tyler County State Bank sent to the Seaboard State Bank & Trust Company two notes executed by the Zavalla Lumber Company, each for the sum of $2,500, dated January 18, 1921; the letter of inclosure being as follows:

"Tyler County State Bank,
"Woodville, Tex., January 28th, 1921.

"Seaboard State Bank & Trust Company, Port Arthur, Texas—Dear Sir: We hereby guarantee payment of notes for $5,000 signed by Zavalla Lumber Company, dated January 18th, 1921, due February 28th, 1921.
"Very truly yours,
"E. A. Dismuke, Cashier."

On said date the Tyler County State Bank charged the Seaboard State Bank & Trust Company with $5,000, the proceeds of said notes, and credited the Zavalla Lumber Company with $5,000, the proceeds of a draft drawn by it on the Seaboard State Bank & Trust Company covering the two notes. The notes were indorsed on the back as follows: "Zavalla Lumber Company, by K. C. Minter, Prest. By E. A. Dismuke, Treas."

The notes were not indorsed by the Tyler County State Bank. Upon receipt of the notes, the Seaboard State Bank & Trust Company accepted said notes and credited the Tyler County State Bank with the sum of $5,000, and charged it with $34.44. When the notes became due, February 28, 1921,

they were returned to the Tyler County State Bank by the Seaboard State Bank & Trust Company for collection. February 28, 1921, the Zavalla Lumber Company executed a note for $5,000, due April 28, 1921, and payable to themselves and properly indorsed, and same was, at a date not shown, sent by the Tyler County State Bank to the Seaboard State Bank & Trust Company, which was not accepted by the Seaboard State Bank & Trust Company, but was returned to the Tyler County State Bank on March 14, 1921. On March 10, 1921, the Seaboard State Bank & Trust Company charged the Tyler County State Bank with the sum of $5,010, and wrote the Tyler County State Bank as follows:

"We are to-day charging your account with $5,010 as per the inclosed duplicate to cover two notes of Zavalla Lumber Company which matured on February 28th. In your letter to us of January 28th, inclosing the paper to us, you guaranteed the payment of same."

The two $2,500 notes came into the possession of the special bank examiner on the day the bank was closed, March 28, 1921. He found them on the desk of E. A. Dismuke in his private file, and they were stamped, "Canceled"; it not appearing by whom or by what authority. The notes were not with other papers belonging to the Tyler County State Bank, nor did they appear as assets of said bank on the inventory of the assets of said bank made by the officer in charge when it was taken over by the state commissioner of insurance and banking. After the bank was closed, on February 25, 1922, the Seaboard State Bank & Trust Company receipted the liquidating agent in charge of the Tyler County State Bank for certain papers, as follows:

"February 25th, 1922. Received this day from F. P. Wood, general liquidating agent of the department of insurance and banking, Zavalla Lumber Company bonds in the sum of ten thousand ($10,000) dollars, which were originally collateral to the two twenty-five hundred dollar notes of the Zavalla Lumber Company sold by E. A. Dismuke to the Seaboard State Bank & Trust Company.

"We also acknowledge receipt of one note dated February 28th, 1921, due April 28th, 1921, signed by the Zavalla Lumber Company, by K. C. Minter, its president, and E. A. Dismuke, its treasurer, payable to the order of themselves, and indorsed to themselves, which was tendered us by the said Dismuke in lieu of the two twenty-five hundred dollar notes mentioned above.

"All of the above taken and accepted by us reserving any right we may have to legally recover the $5,010 involved from either the Tyler County State Bank or the guaranty fund."

There is nothing to show that the $5,000 note was any part of the assets of the Tyler County State Bank. The books of the Tyler County State Bank did not show any credit to the Seaboard State Bank & Trust Company for the two $2,500 notes which were charged by the Seaboard State Bank & Trust Company to the account of the Tyler County State Bank.

Numerous assignments of error and propositions thereunder are presented, but the decisive question in the case is: Was appellee a "depositor," within the meaning of article 486 of the Revised Statutes?

Appellee, the Seaboard State Bank & Trust Company, in effect, contends that as the Tyler County State Bank and the Seaboard State Bank & Trust Company were correspondents and carried a cash deposit account with each other, and as the Tyler County State Bank sent to the Seaboard State Bank & Trust Company the two notes of the Zavalla Lumber Company, and in its letter of transmittal guaranteed the payment of said notes, which said notes were accepted by the Seaboard State Bank & Trust Company, and the amount credited to the Tyler County State Bank, and that when said notes fell due, February 28, 1921, they were sent by the Seaboard State Bank & Trust Company to the Tyler County State Bank for collection, and that when, on March 10, 1921, 10 days after they fell due and had not been paid, it (the Seaboard State Bank & Trust Company) charged the amount of the notes to the Tyler County State Bank, because it had guaranteed the payment of said notes and so notified the Tyler County State Bank that it (the Seaboard State Bank & Trust Company) should have been credited on the books of the Tyler County State Bank with the amount of said notes, $5,000, and that it thus became and was entitled to be recognized as a cash depositor in that amount, the same protected by the guaranty fund.

We have already set forth the facts as disclosed by the record. The notes were executed by the Zavalla Lumber Company of date January 18, 1921, payable to its own order, and by it duly indorsed, due and payable February 28, 1921. E. A. Dismuke, the cashier of the Tyler County State Bank, was also treasurer and a director of the Zavalla Lumber Company. He sent to the Seaboard State Bank & Trust Company the two notes, and the letter of inclosure was as follows:

"Tyler County State Bank,
"Woodville, Tex., January 28th, 1921.
"Seaboard State Bank & Trust Company, Port Arthur, Texas—Dear Sir: We hereby guarantee payment of notes for $5,000, signed by Zavalla Lumber Company, dated January 18th, 1921, due February 28th, 1921.
"Very truly yours,
"E. A. Dismuke, Cashier."

Did Dismuke sell the notes to the Seaboard State Bank & Trust Company as the property of the Tyler County State Bank, or did he negotiate their sale to said bank as the property of and on behalf of the Zavalla Lumber Company, and undertake to have the Tyler County State Bank to guarantee their payment? He was an officer of both the bank

and the lumber company. The notes were not indorsed by the Tyler County State Bank. The record does not show that the bank authorized the letter of guaranty. If the notes were the property of the Tyler County State Bank, it would not have been necessary for it to have guaranteed their payment; for, being the owner of them and selling them to another, its indorsement would have rendered it liable without a specific contract of guaranty. Again, the notes, after they fell due, were sent by the Seaboard State Bank & Trust Company to the Tyler County State Bank for collection, and were found by the bank examiner on Dismuke's desk in his file of private papers—not among the assets and papers of the bank, as they should have been, had they been paid off by the bank, as contended by appellee. Also, after the notes fell due and were sent to the Tyler County State Bank for collection, the Zavalla Lumber Company, on the very day that the two notes fell due, February 28, 1921, executed a new note for the identical sum, $5,000, and this note, together with the collateral that had been attached to the two notes in question, was sent to appellee, and it, on March 14, 1921, refused to accept same, and the note and collateral were returned to the Tyler County State Bank. Besides, in its receipt for certain papers, among which were both the two notes and the $5,000 note and the collateral that had been attached to the two notes, appellee stated that—

"We also acknowledge receipt of one note dated February 28th, 1921, signed by the Zavalla Lumber Company, by K. C. Minter, its president, and E. A. Dismuke, its treasurer, payable to the order of themselves, and indorsed to themselves, *which was tendered to us by the said Dismuke in lieu of the two twenty-five hundred dollar notes mentioned above.*" (Italics ours.)

In addition to this, appellee, in its brief, says:

"The two notes for two thousand and five hundred ($2,500) dollars each, which were offered in evidence were marked, 'Canceled,' showing that they had been canceled upon receipt by the Tyler County State Bank, which bank then mailed another note to the Seaboard State Bank & Trust Company for acceptance *in lieu of the two notes* returned by the Seaboard State Bank, which second note in the sum of five thousand ($5,000) dollars was rejected by the Seaboard State Bank & Trust Company." (Italics ours.)

Thus, we have two admissions by appellee, that the notes were not paid at maturity, but that same were attempted to be renewed. The note for $5,000 above referred to was the note executed by the Zavalla Lumber Company February 28, 1921, the day that the two notes fell due. It thus appears, we think reasonably certain, that the two $2,500 notes were negotiated by Dismuke as an officer of the Zavalla Lumber Company for the benefit of said lumber company, and that in making said negotiations, Dismuke, as cashier of the Tyler County State Bank, undertook to have the bank guarantee the payment of the notes simply as guarantor, and not as a sale of the notes to the appellee as the property of said bank. We think it also appears that when the two notes fell due and were sent by appellee to appellant bank for collection, that instead of the Tyler County State Bank accepting same and canceling same, by reason of its guaranty undertaking with appellee, that when the notes were received for collection, Dismuke procured from the Zavalla Lumber Company a new note in the sum of $5,000 to cover the two notes in renewal, and tendered same to appellee, and at the same time marked the two notes, "Canceled," and placed them in his private file, and that said notes were not paid, as contended by appellee. This conclusion is supported by the further facts that no credit for the two notes was given appellee on the books of the Tyler County State Bank, and the placing among the private papers of Dismuke of the two notes, for if they had been accepted and paid for by the Tyler County State Bank, they would certainly have been placed in the bank among its assets and not in the private papers of the treasurer of the Zavalla Lumber Company, and further credit would have been given appellee on the books of the Tyler County State Bank. If this conclusion is correct, then appellee was not entitled to any credit on the books of the Tyler County State Bank, as it contends.

But if we should be mistaken as to the above conclusions, and if it could be held that the record supports the contention of appellee that the Tyler County State Bank, upon receipt of the two notes sent for collection, did accept same as an original obligation of itself and canceled same, but omitted to give appellee credit upon its books, then we are still confronted with the question: Was appellee, as to the amount of the notes, $5,000, under the circumstances, a depositor, within the intent and meaning of the guaranty fund law?

[1, 2] We do not think so. To create a "deposit," within the meaning of the statute (article 486, R. S.), money or the equivalent of money must, in intention and effect, be placed in or at the command of the bank, the title to which passes from the depositor to the bank, and for which the depositor is entitled to credit upon the bank's books as a cash deposit, and creates the relation of creditor and debtor between the depositor and the bank. Tyler County State Bank et al. v. J. W. Rhodes (Tex. Civ. App.) 256 S. W. 947; Kidder v. Hall (Tex. Sup.) 251 S. W. 497, 499; Hall v. Bank (Tex. Civ. App.) 252 S. W. 828; Bank v. Bank, 84 Tex. 40, 19 S. W. 334; Lankford v. Schroeder, 47 Okl. 279, 147 Pac. 1049, L. R. A. 1915F, 626. The evidence does

not show that appellee, or anyone for appellee, placed the notes in the bank and received credit on its cash deposit account therefor, but shows, to the contrary, that said notes were placed in the private file of the treasurer of the Zavalla Lumber Company, maker of the notes, and that same were not credited to appellee. It is not shown that there was any agreement that if the notes were not paid by the Zavalla Lumber Company when due, appellee should charge appellant with the amount of the notes and receive credit on appellant's books; there is no pleading to such effect, nor is such a course of dealing between the parties either pleaded or proven.

The case of Lankford v. Schroeder, supra, on the facts, is very similar to the instant case. That case arose under the banking laws of the state of Oklahoma, which, as to its guaranty fund, is similar to the provisions of our statute. The plaintiff, at the request of the Planters' & Mechanics' Bank, a banking corporation under the banking laws of said state, had purchased some notes from the bank, paying for them $4,150 cash, and left the notes in the bank under an agreement with the cashier that the bank would collect the notes and place the money received to the purchaser's credit account in the bank. The bank afterwards collected the notes, and without the purchaser's consent or knowledge, appropriated the money to its own use, without giving the purchaser credit therefor, and the bank afterwards, without paying the purchaser his money or crediting his account, failed, and went into the control of Lankford, the state banking commissioner, under the State Banking Law. The plaintiff contended that at the time the bank received payment of the notes, it should have placed the money so received to his credit in the bank, and that having failed to do so, he was, in the purview of the law, a depositor in said bank at the time it failed, and went into the hands of the state banking commissioner, and that his claim should be paid out of the assets of the bank in the hands of the state banking commissioner, and that if they were not sufficient to pay his claim, then that same should be paid out of the state guaranty fund. In passing upon this question, the Supreme Court said:

"That the plaintiff was not a depositor entitled to payment of his claim out of assets in the hands of the bank commissioner or out of the state guaranty fund, we think is clear. A depositor who is protected from loss by a failing bank is one who takes his money or its equivalent and places it, or causes it to be placed, in the bank to his credit subject to his right to check it out or withdraw it from the bank at will."

We think that appellee's petition asserts a liability against the Tyler County State Bank arising out of its guaranty of the payment of the Zavalla Lumber Company notes. It is clearly not a suit upon a contract to give appellee a deposit credit in the Tyler County State Bank—no such contract is alleged or proven.

Appellee is not the holder of a negotiable instrument indorsed by appellant bank, but, on the contrary, a note, the payment of which is guaranteed by appellant bank, and it is this guaranty contract which is sought to be enforced.

The allegation that appellee charged $5,010 on its books against appellant bank cannot amount to a deposit in appellant bank, for the relation of depositor and depositee, or of creditor and debtor, can be established only by contract between depositor and depositee.

The mere sending of the notes by the appellee to appellant bank for collection did not constitute appellee a depositor in appellant bank, but only created the relationship of principal and agent, and as there is no evidence that the notes were paid, and as appellee was not credited with the amount of the notes, that relationship was not changed.

The contract of appellant bank, as disclosed by the record, was not to constitute appellee a depositor in the bank and upon the books of appellant bank, in the sum of $5,000 in case the maker of the notes, the Zavalla Lumber Company, failed to pay them. The contract on the part of appellant bank was a guaranty of the payment of the notes by the maker. This contract, if enforceable, does not establish the relationship of depositor and depositee, such as would be protected by the guaranty fund.

The mere charging by the appellee on its books of the $5,010 against appellant bank did not affect or change the relationship of principal and agent existing between the banks. There is no contract shown that appellant bank would give appellee credit on its books for a deposit in the appellant bank for the amount of the notes, in the event they were not paid by the maker.

At most, the Tyler County State Bank would be liable only for its negligence in the manner in which it sought to collect the notes. If negligent, and its negligence resulted in injury to appellee, then it would be liable to appellee for the damages suffered. But such negligence certainly would not create the relationship of depositor and depositee which would be protected by the guaranty fund. However negligent the Tyler County State Bank may have been in the collection of the notes, its negligence did not and could not have resulted in constituting appellee a noninterest-bearing and unsecured depositor for such sum in said Tyler County State Bank.

The relations between the appellee and appellant Tyler County State Bank, we think, are very different from those of an ordinary depositor, who, by the law, is intended to be protected. At most, if we are correct in our interpretation of the facts and application

of the law, appellee has its cause of action against the maker of the notes and against the Tyler County State Bank on its guaranty, if as such, under the circumstances, it is liable, which we do not determine.

Our conclusion is that the judgment is without support in the evidence, and, therefore, will be reversed and judgment here rendered for appellants.

Reversed and rendered.