### STATE BANKING BOARD et al. v. JAMES et al. (No. 1050.)

(Court of Civil Appeals of Texas. Beaumont. June 21, 1924. Rehearing Denied in Part and Granted in Part July 7, 1924.)

**1. Banks and banking** ⬅15—"Deposit" defined.

To create a "deposit" with Guaranty Fund Law (Rev. St. art. 486), money, or its equivalent, must, in intention and effect, be placed in or at command of bank, title to which passes from depositor to bank and for which depositor is entitled to credit upon bank's books as a cash deposit, and creates relation of creditor and debtor between depositor and bank.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deposit.]

**2. Banks and banking** ⬅15—Plaintiffs held not to be "depositors" in bank under Guaranty Fund Law.

Where notes executed by stockholders and directors to aid bank were sold to another bank, and proceeds placed to credit of such bank on books of purchaser until drawn out in usual course of business, makers of notes were not "depositors" of their bank protected by Guaranty Fund Law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Depositor.]

**3. Bills and notes ⬤═96—Notes executed by stockholders and directors of bank held to be executed for its accommodation.**

Where stockholders and directors, to secure money for their bank, executed notes payable to another bank, and procured such bank to discount them, and to credit proceeds to their bank, such notes were accommodation paper.

**4. Bills and notes ⬤═96—"Accommodation note" defined.**

An "accommodation note" is one to which accommodating party puts his name without consideration, to accommodate another party who desires to raise money on it, and who is to provide for note when due, under Vernon's Ann. Civ. St. Supp. 1922, art. 6001—29.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accommodation Bill or Note.]

**5. Banks and banking ⬤═15—Claims of stockholders and directors as creditors of insolvent bank held not secured by depositors' guaranty fund; "creditor;" "depositor."**

Claims of stockholders and directors who executed notes for accommodation of their bank and whose claims were unsecured and bore no interest, were not secured by depositors' guaranty fund, under Const. art. 16, § 16 (Rev. St. arts. 445, 486), since Legislature in passing Banking Deposits' Guaranty Law did not intend to place creditors of a state bank who were not depositors therein, under protection of depositors' guaranty fund, the same as depositors; the use of the word "creditors" in Rev. St. arts. 465, 474, 480, 483, being intended in the sense of "depositors" who are creditors of bank and owners of deposits therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Creditor.]

Appeal from District Court, San Jacinto County; J. L. Manry, Judge.

Action by C. C. James and others against the State Banking Board and others. Judgment for plaintiffs, and defendants appeal. Affirmed in part, and reversed and rendered in part.

W. A. Keeling, Atty. Gen., and John W. Goodwin and Walace Hawkins, Asst. Attys. Gen., for appellants.

Ben Campbell, of Houston, for appellees.

O'QUINN, J. We, shall refer to appellees as plaintiffs and appellants as defendants, that being their attitude in the court below. This is a suit by C. C. James, S. Finger, W. S. Dixon, R. L. Bledsoe, and Jeff Cochran against J. L. Chapman, commissioner of banking and insurance of the state of Texas, and C. V. Terrell, Treasurer of the state of Texas, and W. A. Keeling, Attorney General of the state of Texas, composing the state banking board, and sued as such, and the Shepherd State Bank of Shepherd, Tex., and W. A. Whitely, liquidating agent in charge of said Shepherd State Bank. The Shepherd State Bank was incorporated under the banking laws of the state of Texas, and was doing a general banking business at Shepherd, in San Jacinto county, up to and until August 17, 1921, when it ceased to do business, and, was taken in charge by the commissioner of banking for liquidation. When the Shepherd State Bank was incorporated, it elected to do business under the guaranty fund plan.

Plaintiffs' petition alleged:

"(5) Plaintiffs further allege that on the 5th day of March, 1921, they had on deposit with the Shepherd State Bank the sum of $10,320.47, and said money remained on deposit in said bank from the said 5th day of March, 1921, until said bank became insolvent and went into voluntary liquidation on the 17th day of August, 1921. They further allege that they nor either of them had any security whatsoever for said money or any part thereof, and that they received no interest or profit upon said money or any part thereof so deposited in said bank, nor were they or either of them directly or indirectly promised by the said bank or any stockholder in said bank any interest, revenue or profit on said money or any part thereof. The said bank during all of the time from the 5th day of March to August 17, 1921, held plaintiffs' said money and used it in the conduct of its own business without any obligation or promise, directly or indirectly, on the part of said bank to pay these plaintiffs or either of them any interest or profit on said money or any part thereof, and they allege that said bank was in no way liable to them or either of them for any interest or profit or revenue on the said money or any part thereof from March 5th to August 17, 1921, and the said bank was on August 17, 1921, justly due and owing to these plaintiffs jointly and severally the said sum of $10,320.47 deposited by them in said bank, as hereinbefore alleged, and said money has never been paid to these plaintiffs by the said bank or any one else, and they are entitled to have their said money so deposited in the said Shepherd State Bank as above alleged paid to them out of the depositors' guaranty fund of the state of Texas.

"(6) Plaintiffs further allege that within the time prescribed by the commissioner of insurance and banking in charge of the affairs of the said insolvent bank they presented their claim duly verified for the amount so due and owing to them as depositors of said bank as hereinbefore alleged, and the state officer in charge of the affairs of said Shepherd State Bank and its liquidation, to whom plaintiffs presented their said claim for allowance against said guaranty fund, held said claim under advisement, and did not act upon plaintiffs' said claim until the 19th of February, 1923, at which time the officer of the state in charge of the liquidation of the affairs of said Shepherd State Bank refused to allow plaintiffs' claim as a claim against the depositors' guaranty fund of

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the state of Texas and refused to recognize plaintiffs' right to have said claim paid out of said fund, and these plaintiffs bring this suit to establish their claim against said fund and they pray that the court will allow said claim as a claim against the said depositors' guaranty fund and require that the same be paid by the state banking board in due course of administration of the affairs of said Shepherd State Bank.

"(7) Plaintiffs further allege that on or about the 17th day of August, 1921, Ed Hall, who was then the acting commissioner of insurance and banking of the state of Texas, took into his custody and possession all of the affairs and assets of said Shepherd State Bank, and he and his successors in office have been constantly since said last named date in actual control and management of the affairs of said bank. Said commissioner and his successors in office and their employés have been since August 17, 1921, administering and liquidating the said Shepherd State Bank, and the assets of said bank plaintiffs are informed and believe are wholly and entirely insufficient to pay these plaintiffs in whole or in part their claim against the said bank for the money they deposited in said bank as hereinbefore alleged, and they will lose their debt unless their claim hereinbefore alleged be by this court established and allowed as a claim against the depositors' guaranty fund now under the control and management of the state banking board, defendants in this suit, and this court is therefore asked to require the said state banking board to pay plaintiffs' claim in full against said bank as hereinbefore alleged, and they ask that their claim against said bank be established and fixed as a proper charge and claim against said bank and depositors' guaranty fund, and that their claim be declared to be entitled to be paid in full out of the said fund by the officers of the state of Texas in charge and in control of the said depositors' guaranty fund."

Each of the defendants answered by general demurrer and general denial. The court overruled each of the demurrers, to which rulings each of the defendants duly excepted. Plaintiffs dismissed their suit against Whitley, the liquidating agent. The case was tried before the court without a jury, and judgment was rendered in favor of plaintiffs and against the defendants in the sum of $10,320.47, with interest thereon at the rate of 6 per cent. per annum, and also judgment classifying plaintiffs' claim as an unsecured, noninterest-bearing deposit, payable out of the guaranty fund, and that said judgment be certified to the commissioner of banking for observance, to which judgment the defendants excepted, and they bring this appeal.

Plaintiffs' petition alleged and the evidence shows that the suit originated in this way: Plaintiffs, C. C. James, S. Finger, W. S. Dixon, R. L. Bledsoe, and Jeff Cochran and Ed Cochran compose the board of directors of the Shepherd State Bank, and E. S. Dixon was president and Ed Cochran was cashier of the bank. The bank was short funds, and upon request of Ed Cochran, the cashier, on October 2, 1920, plaintiffs executed their joint and several promissory note payable to the City National Bank of Galveston in the sum of $7,500, due December 1, 1920. This note the City National Bank of Galveston cashed, and the entire proceeds were placed to the credit of the Shepherd State Bank in said City National Bank. October 25, 1920, the same parties, for the same purpose, executed another note in the sum of $7,500, payable to the City National Bank of Galveston, due November 24, 1920, which note the City National Bank also cashed, and the entire proceeds were credited to the Shepherd State Bank on the books of the City National Bank. The funds realized by the sale of these two notes remained to the credit of the Shepherd State Bank in the City National Bank until drawn out in the usual course of business by the Shepherd State Bank. The record does not disclose that any part of the proceeds of these notes was ever placed to the credit of any of the plaintiffs in the Shepherd State Bank. When the notes fell due they were not paid, but on December 20, 1920, the two notes were consolidated, and plaintiffs executed a renewal note in the sum of $15,000, due February 15, 1921, and payable to the City National Bank of Galveston. This new note was discounted by the City National Bank in the sum of $166.26, plus $3.00 for revenue stamps, which charges were paid by the Shepherd State Bank, and the proceeds credited to the Shepherd State Bank. When this renewal note fell due it was not paid, but was consolidated with a note held by the City National Bank in the sum of $6,500, due by the Shepherd Sand & Gravel Company, and a new note for the sum of $21,500 was executed by plaintiffs on March 5, 1921, payable to-said City National Bank and due on demand. June 1, 1921, the Shepherd State Bank paid the City National Bank the sum of $2,500, which was credited upon the last renewal note. The remainder due on the note was not paid until November 28, 1921, when same was settled by plaintiffs.

After the Shepherd State Bank failed, plaintiffs, on November 7, 1921, filed with the commissioner of banking their claim, as follows:

"Proof of Claim.

"Shepherd State Bank to W. S. Dixon, S. Finger, Ed Cochran, R. L. Bledsoe, Jeff Cochran and C. C. James, Debtor.

"On account of the following transaction the Shepherd State Bank owes the above-named parties the sum of $12,500, and the parties to whom this amount is due are entitled to participate in the guaranty fund to which the said Shepherd State Bank was a subscriber, and, if for any reason they are not entitled to participate in the guaranty fund, they are entitled to be considered creditors of the Shepherd State Bank in the amount hereinafter stated.

"On or about the 2d day of October, A. D. 1920, the Shepherd State Bank being in need of funds, and about that date the above-named parties executed their joint and several note for $7,500, payable to the City National Bank of Galveston, Tex. This note the said City National Bank of Galveston cashed and the entire proceeds thereof were placed to the credit of the Shepherd State Bank with the said City National Bank of Galveston, and on or about the 25th day of October, A. D. 1920, the same parties made their joint and several note for the sum of $7,500, payable to the City National Bank of Galveston, which note was also cashed by the said City National Bank of Galveston, and the entire proceeds of said note were placed to the credit of the Shepherd State Bank with the said City National Bank of Galveston.

"The books of the City National Bank of Galveston, as well as the books of the Shepherd State Bank, show that the Shepherd State Bank actually received and used in its own business all of the money realized from each of the above-described notes. The Shepherd State Bank was neither the maker or indorser of either of said notes, but got the proceeds thereof.

"Affiants say that when the two $7,500 notes above mentioned matured that they were by mutual consent of all of the parties consolidated into one $15,000 note. This was done about December 20, A. D. 1920, and affiants gave their joint and several note for this last-named amount to the City National Bank of Galveston.

"Affiants further say that about the 1st of March last the said City National Bank was also the holder and owner of a note executed by the Shepherd Sand & Gravel Company for $6,500, which note was about the 1st of March last, under the direction of Ed Cochran and with the consent of affiants, consolidated with the $15,000 note above mentioned, the two notes thus consolidated making a total of $21,500, and affiants gave their note to the City National Bank of Galveston for this last-named amount—$21,500—due on demand.

"On or about June 1, A. D. 1921, the Shepherd State Bank paid on said last-named note $2,500. Affiants having no information as to the exact source from which this $2,500 came, they credit the same to the original $15,000 indebtedness, being the portion of said $21,500 note that was actually received by the Shepherd State Bank. By so crediting said payment on said amount leaves a balance due of $12,500 by the Shepherd State Bank.

"Affiants further say that no other payments have been made within their knowledge or within the knowledge of either of them, and there is still due by the Shepherd State Bank the full amount of $12,500 on said original $15,000 note, after deducting the payment as above stated.

"Affiants further swear that they have received no part of the money realized from the sale of the above-mentioned two $7,500 notes, or either of them, the execution of said notes being at the request and for the benefit of the Shepherd State Bank, and the said Shepherd State Bank received the entire proceeds of said notes, and have used said money in the conduct of its business. Each of the above-named parties swear that the $12,500 debt, as above stated, due them by the Shepherd State Bank, is just, due, and wholly unpaid; that all just and lawful offsets, payments, and credits known to affiants have been allowed, and that the Shepherd State Bank has not paid the said notes, or either of them, to affiants or the holder of said notes, except $2,500 as above stated.

"Affiants further swear that they, nor either of them, have ever received, directly or indirectly, any interest on the said money, or any part thereof nor, have they, or either of them, been promised, directly or indirecly, any interest on said amount, or any part thereof, by the Shepherd State Bank, or any one else, that they nor either of them, have any security for said $12,500, or any part thereof, and that the said amount of $12,500 is still due and owing to affiants jointly, as stated above, by the Shepherd State Bank and the said amount is long past due and wholly unpaid.

"This claim is therefore presented with the request that the same be established, and allowed as a claim for $12,500 against the Shepherd State Bank, and that they be allowed to participate in the Guaranty Fund to which the said Shepherd State Bank was a subscriber, for the $12,500, but if for any reason this claim cannot be allowed and approved as a claim against the Guaranty Fund, then they ask that their claim be allowed for $12,500, and that same be classified and approved as the claim of general creditors against the said Shepherd State Bank for said $12,500, and that they be permitted to receive their pro rata of the assets of said Shepherd State Bank now being liquidated by the Commissioner of Insurance and Banking of the state of Texas."

The above proof of claim was duly subscribed to by each of the plaintiffs, was presented to the Commissioner of Banking, and rejected as a claim against the guaranty fund, and this suit instituted to establish same as a deposit in favor of plaintiffs, to be paid out of the guaranty fund, with the result as above set out.

Numerous propositions and counterpropositions are presented in the briefs of the parties, but as we think the answer to the question whether under the facts plaintiffs below were depositors in the Shepherd State Bank within the meaning of the Guaranty Fund law determines the case, we shall discuss that question only.

Plaintiffs brought this suit to have established as a general deposit in the Shepherd State Bank the claim set forth in their petition. The facts upon which they base their claim that their demand is a general deposit in said Shepherd State Bank are specifically alleged. The defendants insist that these facts do not constitute the demand of plaintiffs a deposit in the Shepherd State Bank, but that the relation created between plaintiffs and the Shepherd State Bank was that of accommodator and accommodatee of an accommodation note. What, then, under the facts, was the relation between the plaintiffs and the bank? If it was that of depositor and depositee, the court properly over-

(264 S.W.)

ruled defendants' demurrer, but, if that of accommodator and accommodatee of an accommodation note, then the demurrer should have been sustained.

[1, 2] We do not believe that the facts show plaintiffs to be "depositors" within the meaning of the Guaranty Fund Law. To create a "deposit" within the meaning of the statute (article 486, R. S.), money, or the equivalent of money, must, in intention and effect, be placed in or at the command of the bank, the title to which passes from the depositor to the bank, and for which the depositor is entitled to credit upon the bank's books as a cash deposit, and creates the relation of creditor and debtor between the depositor and the bank. Kidder v. Hall (Tex. Sup.) 251 S. W. 497; Tyler County State Bank v. Seaboard State Bank & Trust Co. (Tex. Civ. App.) 257 S. W. 951; Lankford v. Schroeder, 47 Okl. 279, 147 Pac. 1049, L. R. A. 1915F, 623. The undisputed evidence shows that the plaintiffs, nor any one for them, did not place the notes or the money realized from the sale of the notes in the Shepherd State Bank and receive credit therefor, but that, to the contrary, the notes were executed by plaintiffs for the purpose of aiding the Shepherd State Bank, of which they were stockholders and directors, in securing funds, and that the notes were sold to the City National Bank of Galveston for the benefit of said Shepherd State Bank, and that the entire proceeds realized from the sale of said notes were placed to the credit of the Shepherd State Bank on the books of the City National Bank, and remained there subject to the check of said Shepherd State Bank until same were drawn out by said Shepherd State Bank in the usual course of business. It appears without dispute that the money received from the sale of the notes was not deposited at any time in the Shepherd State Bank to the credit of plaintiffs, nor was same ever intended to be so deposited, but that said money was intended for the use of said Shepherd State Bank, and was to be and was deposited with the City National Bank for the use and subject to the checks of said Shepherd State Bank. Under these facts, plaintiffs were not in any sense depositors in the Shepherd State Bank, much less such depositors as would be protected by the Guaranty Fund Law.

[3, 4] Again, we think that appellants' contention that the notes were executed by plaintiffs as an accommodation to their bank —the Shepherd State Bank—aiding it to secure funds needed to build up its reserve is sound. It is admitted that the notes were not made in order to get money for the use of the makers, but that it was for the benefit of the Shepherd State Bank. Plaintiffs did not borrow the money for themselves. For the purpose of securing money for the Shepherd State Bank they executed their notes payable to the City National Bank, and procured said bank to discount the notes, and at the request of plaintiffs. credit the whole of the proceeds of the notes to the Shepherd State Bank. We think the facts clearly show the transaction to have been an accommodation matter. An accommodation note, is one to which the accommodating party puts his name, without consideration, for the purpose of benefiting or accommodating another party who desires to raise money on it, and who is to provide for the note when due. Article 6001—29, Vernon's Ann. Civ. St. Supp. 1922; 1 Daniel on Neg. Inst. § 189; Rea v. McDonald, 68 Minn. 187, 71 N. W. 11. Instead of plaintiffs, by reason of the transaction shown, becoming depositors in the Shepherd State Bank, they became its accommodators by loaning to it their name. Brannon's Neg. Inst. Law, § 29.

[5] But appellees say that, if they are not depositors within the meaning of the law, nevertheless the judgment should be affirmed, for in that they are creditors of the bank, and that "All creditors, as well as depositors of a state bank which is a member of the depositors' guaranty fund system, are equally secured by the depositors' guaranty fund, where the debt or deposit bears no interest and no interest has been promised directly or indirectly, and the debt or deposit is not otherwise secured," and that, if it be conceded that appellees were accommodation creditors of the Shepherd State Bank, under the Constitution (art. 16, § 16) and laws (R. S. arts. 445 and 486), as their debt or claim against said bank did not bear interest, nor was any interest thereon promised to be paid, and the debt was not otherwise secured, the law should be construed to include creditors as well as depositors whose claims are non-interest-bearing and not otherwise secured.

That portion of the Constitution invoked by appellees reads as follows:

"The Legislature shall, by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of state supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof."

Article 445, R. S., provides:

"Each and every corporation which may hereafter be incorporated under the laws of this state, with banking and discounting privileges, and each banking and trust company in this state heretofore incorporated under the provisions of chapter 10 of the Acts of the First Called Session of the Twenty-Ninth Legislature, and known as the State Banking Law, or hereafter incorporated under the provisions of this title, shall, at its option, protect its depositors in the manner hereinafter prescribed, either by availing itself of the Depositors' Guaranty Fund herein provided for, or by the depositors' bond security system hereinafter set forth."

Article 486, R. S., provides:

"In the event the commissioner of insurance and banking shall take possession of any bank or trust company, subject to the depositors' guaranty fund plan of this chapter as herein provided, the depositors of said bank or trust company, as specified in article 448, shall be paid in full out of the cash in said bank or trust company that can be made immediately available from such bank; and the remainder shall be paid out of the depositors' guaranty fund through the said board, in the event the cash available in said institution shall be insufficient; provided, that deposits upon which interest is being paid, or contracted to be paid, directly or indirectly by said bank, its officers or stockholders, to the depositor and deposits otherwise secured, shall not be insured under this chapter, but shall only receive the pro rata amount which may be realized from the assets, resources and collections of and from such banks and trust companies, its stockholders or directors."

Appellees contend that the Legislature intended the terms "depositors" and "creditors" to mean the same thing, and that it was the legislative intent to secure creditors as well as depositors when the bank was not paying nor had promised to pay such creditor or depositor interest on the money, and the same was not otherwise secured. As evidence of this intent, appellees point out that in article 465, among other things, it is provided that "claims presented after the expiration of the time fixed in the notice to the creditors shall be entitled," and that in article 474 it is provided that "whenever the commissioner shall have paid to each and every depositor and creditor of such state bank * * * whose claim or claims as such creditor or depositor shall have been duly proven, * * * and also article 480 provides that the money shall be "deposited in some state bank to be designated by the state banking board, to the credit of the commissioner in his name of office, in trust for the several depositors with, and creditors of, the liquidated state bank," and article 483 provides, among other things, "or may authorize him [the banking commissioner] to apply the same, towards defraying the expenses incurred in payment and distribution of such unclaimed deposits or dividends to the depositors and creditors entitled to receive the same," urgently insisting that under the Constitution and laws referred to every claim against a defunct bank, whether a depositor or creditor, which claim is not interest-bearing and unsecured, is equally secured by the depositors' guaranty fund, and is entitled to the protection of said fund.

We cannot agree to this contention. It is true that the words "depositors" and "creditors" are found in the statutes as contended by appellees, but we do not think their use there is in the sense urged by appellees. While all general depositors of a bank are creditors of a bank, all creditors of a bank are not necessarily depositors in the bank. For instance, if A. loans money to a bank and takes the bank's note for the money, he is a creditor of the bank in the amount of the note, but he is not in any sense a depositor in the bank as to the amount of the note. We do not think that the Legislature, in passing the "Banking Deposit Guaranty Law" (title 14, c. 5, Complete Texas Statutes), intended to place the creditors of a state bank, who were not depositors in said bank, under the protection of the guaranty fund, the same as depositors, but that the use of the word "creditors" was intended to be in the sense of "depositors," who are creditors of the bank, and that those only who were the owners of deposits in the bank within the meaning of "deposit" as defined in Kidder v. Hall (Tex. Sup.) 251 S. W. 499, and Tyler County State Bank v. Seaboard State Bank & Trust Co. (Tex. Civ. App.) 257 S. W. 951, are protected by said law.

In Kidder v. Hall, supra, Chief Justice Cureton, speaking for the court, says:

"Aside, however, from the technical question of jurisdiction, it is plain relator's claim is not based upon a *noninterest-bearing and unsecured deposit, the only class of obligations protected by the depositors' guaranty fund.* Revised Statutes, art. 486." (Italics ours.)

Furthermore, if the directors and stockholders of a bank can, in any amount they may choose, and as often as they please, borrow money in their own name and loan same to their bank free from interest, and the bank, by reckless mismanagement or even dishonest manipulation of the bank's funds, squander, misappropriate or lose the funds, and finally, under pressure of the bank commissioner, be closed, and then the directors and stockholders who furnished the money borrowed can successfully claim repayment out of the guaranty fund, it would seriously jeopardize said fund intended for the protection of depositors, and open wide the door leading to reckless and fraudulent transactions of those in charge of the bank, and create such a strain upon the guaranty fund, furnished by other banks, as to either cause failure or compel them, as matter of self-protection, to abandon the system of state banking and go under the national system. The Legislature never intended to make possible any such situation.

Plaintiffs' petition not stating a cause of action, defendants' demurrer should have been sustained. Therefore, the judgment of the lower court is reversed, and judgment here rendered in favor of appellants.

Reversed and rendered.

### On Rehearing.

In a former day of this term we reversed the judgment herein in favor of appellees, and rendered judgment for appellants. In

their motion for a rehearing appellees call our attention to the fact that in the court below they obtained judgment against the Shepherd State Bank for the amount of their claims against it in the sum of $10,320.47, which had, prior to the filing of this suit in the court below, been approved by the Banking Commissioner as a general debt of the Shepherd State Bank to share pro rata with other unsecured creditors, and which judgment was not contested in the trial in the court below, not on this appeal, but that in reversing and rendering the judgment we had also reversed and rendered this judgment, as well as the judgment against the state banking board and commissioner of banking. It was not our intention to reverse this part of the judgment, but we addressed ourselves to that portion of the judgment establishing the claim of appellees as a noninterest-bearing and unsecured deposit in the Shepherd State Bank, and ordering that same be paid out of the Guaranty Fund. By oversight we failed to mention appellees' judgment against the Shepherd State Bank. We here reform our judgment heretofore entered and affirm that portion of the judgment below in favor of appellees against the Shepherd State Bank. Otherwise the motion for rehearing is overruled.