BANK OF ROCKWOOD v. E. J. FOSTER, et al.

Eastern Section. June —, 1930.

Howard H. Baker, of Huntsville, for appellant, 1st Nat. Bk. of Huntsville.

Haggard, Jennings, Wright & Burns, of Rockwood, for First Nat. Bank of Rockwood.

E. G. Foster, of Huntsville, for E. J. Foster, et al.

OWEN, J. These two bills filed by the same complainant were consolidated in the court below.

On February 20, 1928, the complainant filed its original bill against E. J. Foster, E. G. Foster, L. E. Ryan, G. W. Strunk, J. I. Foster, John Toomey and John L. Silcox, seeking to recover the sum of four thousand seventy-four and 62/100 dollars ($4,074.62), together with interest thereon and ten percent attorneys fees, on a promissory note for said amount dated July 11, 1926.

On the 17th day of March, 1928, the defendants filed an answer to said bill and also a cross-bill, admitting the execution by them of the note sued on, but stating that said note is a renewal note, and that the facts surrounding the execution of the original' note are as follows:

That on July 23, 1924, the First National Bank of Huntsville, Tennessee, had re-discounted with the Federal Reserve Bank, the sum of seventeen thousand, six hundred fifteen dollars ($17,615), and that in addition to said sum said First National Bank of Huntsville owed bills payable in the sum of twenty-five thousand dollars ($25,000), and that in order to secure the payment of said amounts of indebtedness, it had placed with the Federal Reserve Bank $17,615 in collateral, with the First National Bank of Oneida, Tennessee, $5,000, with the Fifth Third National Bank of Cincinnati, Ohio, $20.000, with the Fourth and First National Bank of Nashville, Tennessee, $10,000, and that in order to prevent the First National Bank of Huntsville being taken over by a Receiver and liquidated, the defendants in said cause who were the directors and officers of the First National Bank of Huntsville, nego-

tiated for and obtained a loan from the First National Bank of Rockwood in the sum of $15,000, and executed two notes therefor in the principal sum of $7,500 each, and that the amount of this loan thus obtained was transferred to the credit of First National Bank of Huntsville, and used by it in the payment of its obligations; that these defendants did this because the First National Bank of Huntsville could not borrow any more money, and that said obligations and notes executed for said loan by the defendants were recognized as the obligations of the First National Bank of Huntsville; that these notes were renewed from time to time, and that when the obligations of the First National Bank of Huntsville had been paid down to a point where said bank could sign said note, the makers thereof requested the First National Bank of Huntsville to assume said obligation, and that its directors refused to do so; that thereupon the makers of said notes refused to renew them any further.

Upon these facts the said defendants filed their answer as a cross-bill, and prayed process, requiring the complainant, First National Bank of Rockwood, and the First National Bank of Huntsville, to answer said cross-bill, and further praying that:

"The First National Bank of Huntsville, Tennessee, be decreed to be estopped by its actions in denying the obligation to the full extent of said note sued on," and, third, "that the cross-complainants have a judgment against the First National Bank of Huntsville, Tennessee, for the full amount of said note, interest and attorneys fees sued on by the First National Bank of Rockwood, and that it be required to assume and pay same."

The First National Bank of Rockwood filed its answer to said cross-bill, stating that it neither admitted nor denied the allegations of the cross-bill with respect to the indebtedness of the First National Bank of Rockwood, set up by the cross-complainants in their cross-bill, and further stating that the First National Bank of Rockwood at the instance of certain officers and directors of the First National Bank of Huntsville had loaned to said cross-complainants the sum of $15,000, in order to tide said bank over a financial difficulty or crisis which at the time confronted it, and alleging that at the time it made said loan to the cross-complainants, it understood they were borrowing said money for the use and benefit of the First National Bank of Huntsville.

The Bank of Rockwood further averred that it was not advised as to what attitude the officers and directors of said First National Bank of Huntsville have now taken or assumed with reference to the payment of said loan. On May 31, 1928, the First National Bank of Huntsville filed its answer to the cross-bill, admitting that on July 23, 1924, it had re-discounted with the Federal Re-

serve Bank, the sum of $17,615, but denying that it, on said date, was indebted to the First National Bank of Oneida in the sum of $5,000. It admitted that on said date it had re-discounted paper with the First National Bank of Oneida, Tennessee. It admitted that on said date it owed a note for $10,000 to the Fifth Third National Bank of Cincinnati, Ohio, and owed a like amount to the Fourth First National Bank of Nashville, Tennessee, and that on said date it had additional collateral with the Federal Reserve Bank, but it denies that it had $5,000 additional collateral to the rediscounted paper at the First National Bank of Oneida. The answer neither admits nor denies that in order to save the Bank's being taken over by a Receiver and liquidated, it became necessary to raise additional funds.

The answer denies that the First National Bank of Huntsville ever authorized defendants and cross-complainants to obtain a loan of $15,000 from the First National Bank of Rockwood. On the contrary, the facts with reference to said loan are averred in the answer of First National Bank of Huntsville as follows:

"The cross-complainants, all of whom were stockholders and directors in the First National Bank of Huntsville, except E. G. Foster, took notes from the assets of the First National Bank of Huntsville, Tennessee, to the extent of $15,000, and cross-complainants borrowed the said $15,000 from said Rockwood Bank.

.  .  .  .  .  .

"And had the proceeds of said $15,000, to-wit, $14,700, deposited to the credit of this defendant bank, although no record was ever made on the minute book of defendant bank of the said transaction."

It is further insisted in the said answer that the First National Bank of Huntsville has never made any payment of any kind on the note sued on and has never recognized same as the liability of the First National Bank of Huntsville, and has never carried same as a liability on any of its statements or reports, but that on the contrary, the cross-complainants, J. I. Foster and L. E. Ryan, and probably others of the cross-complainants, have repeatedly signed and sworn to statements of the condition of the First National Bank of Huntsville to the Comptroller of the United States of America since July 23, 1924, and in none of said sworn statements has the note of indebtedness claimed by the First National Bank of Rockwood ever been listed as a liability of First National Bank of Huntsville.

The answer also sets up the amount of stock or amount of shares that various ones owned in said Bank of Huntsville, and with the exception of E. G. Foster, it was said that all of these cross-complainants had very material and financial interest and investment

to protect and in that way received material benefit and consideration from said transaction.

The second suit was against the same defendants upon a note for $3,503.87 dated July 11, 1926, and the same defenses were made by the defendants as in the first bill and a like cross-bill was filed by the defendants, and the two banks filed similar answers to the ones they had filed in the first case. A large volume of proof was taken and on August 16, 1929, Chancellor Wallace rendered a written opinion as follows:

"In this cause I have come to the conclusion that the notes executed to the Rockwood National Bank on July —, 1924, for $7500 by the defendants to the original bill, were executed for the purpose of securing funds for the First National Bank of Huntsville, and that the signers of said notes were accommodation makers. State Banking Board v. James, Tex. Civil Appeals, 264 S. W., 145.

"I am of the opinion that the evidence fails to show that the notes belonging to the First National Bank of Huntsville which were used as collateral to the said notes executed to complainant were sold to the directors of the First National Bank of Huntsville.

"The petition filed praying to have corrected Question No. 6 in the re-direct examination of L. E. Ryan on page 38 will be disallowed.

"Ryan files an affidavit stating that the deposition as it now exists is correct and for this reason I feel that it should not be changed."

The decree was, in each case, in favor of the First National Bank of Rockwood against the defendants for the amount that the Bank of Rockwood claimed in each case and the Court further decreed that said notes were executed for the purpose of securing funds for the First National Bank of Huntsville, and that the signers of said notes were accommodation makers. The court further decreed that the notes placed by the defendants with the First National Bank of Rockwood as collateral to their notes, were not sold to the directors of the First National Bank of Huntsville. The Court further decreed that the cross-complainants in each of said causes were each accommodation makers in each of said notes, and that while the First National Bank of Rockwood in each of these causes is entitled to a judgment against the makers of said notes, that the makers of said notes are entitled to the relief they seek by their cross-bills, and a recovery was awarded the cross-complainants against the First National Bank of Huntsville for $10,042.44, together with all the costs of the cause.

The Bank of Huntsville excepted to this decree and also excepted to a number of adverse rulings as to the testimony and various depositions, prayed and perfected an appeal and has as-

signed twenty-two errors. These errors will be grouped into three classes or groups.

By the 1st, 2nd, 4th, 5th, 6th and 7th assignments it is insisted that the court erred in finding as a fact that the notes executed to the First National Bank of Rockwood on July 21, 1924, were executed for the purpose of securing funds for the First National Bank of Huntsville, and that the signers of said notes were accommodation makers. It is insisted that the Chancellor erred in adjudging and decreeing that the notes belonging to the First National Bank of Huntsville which were used as collateral to the notes executed to the First National Bank of Rockwood, were sold to the directors of the First National Bank of Huntsville; and that the Court erred in decreeing that the cross-complainants were entitled to a judgment against the First National Bank of Huntsville.

By the second group which embraces assignment No. 3, it is insisted that the court should have corrected Question No. 6 in the re-direct examination of the witness L. E. Ryan. The Chancellor, in his opinion, tells why he did not grant this petition. Ryan corrected his evidence by an affidavit and the Chancellor accepted the correction and we think, properly so. The third assignment is overruled.

The third group of assignments go to the testimony of three or four witnesses. Three assignments relate to the testimony of William Ensminger, cashier of the Bank of Rockwood. Assignments 12 to 18 are in regard to the testimony of J. I. Foster, former president of the Bank of Huntsville. Assignments 18 to 21 are in reference to the testimony of E. J. Foster. Assignments 21 to 22 inclusive relate to the testimony of G. W. Strunk.

It appears that the money received on the notes hypothecated to the Bank of Rockwood was placed to the credit of the Bank of Huntsville. Ensminger was allowed to testify that he recognized the loan represented by the two notes of $7500 each as a loan to the Bank of Huntsville and that the money was placed to the credit of the Bank of Huntsville and that the cross-complainants received no benefit from said loan. We think this evidence was properly admitted and these three assignments are overruled.

J. I. Foster was permitted to testify that the parties who signed the note to the Bank of Rockwood did not buy $15,011 worth of notes for $15,000 as the Bank of Huntsville insisted. Foster testified that the $15,011 worth of notes that were turned over to the directors were of very little value and that the directors never authorized or directed a statement made on the bank book in reference to the $15,011 worth of notes, "sold to the directors."

E. J. Foster testified that the transaction was for the benefit of the Bank of Huntsville; that the money was borrowed exclusively

424

for the Bank of Huntsville from the Bank of Rockwood and that no director received one cent of money, but that the bank got the money and used it; that it was never thought of as a loan to the directors and that the new board of directors who had instituted this lawsuit knew it.

G. W. Strunk testified that there had never been any question about the two notes, being sued on, being the obligation of the Bank of Huntsville and that the directors never directed that a minute entry be made on any book in the bank, the words, "sold to directors," in reference to the $15,011.66 worth of notes as listed.

We are of the opinion that all this evidence was properly admitted; that it was competent to show the truth of the matter in regard to why the Bank of Rockwood made the loan and why the cross-complainants executed the two notes sued on; whose debt it was, whether it was the debt of the parties who executed these notes or the debt of the Bank of Huntsville. All the assignments of error with reference to the admission and exclusion of the testimony are overruled.

The other assignments raise but one question and that is, whether or not the cross-complainants were accommodation endorsers or makers for the benefit of the Bank of Huntsville. Was it the act of the Bank of Huntsville through its officers and directors in borrowing the $15,000, less $300 discount, from the Bank of Rockwood or are the defendants in the original suits and cross-complainants not entitled to a judgment against the Bank of Huntsville? They are primarily liable to the Bank of Rockwood on the two notes sued on. Are they entitled to be reimbursed from the Bank of Huntsville? We find as a fact that both notes executed to the Bank of Rockwood were executed solely for the benefit of the Bank of Huntsville. The Bank of Huntsville had borrowed to its full limit; it owed notes in Nashville, Tennessee, Cincinnati, Ohio, and other places and to keep the bank going these cross-complainants, by the consent of the Bank of Huntsville, had obtained a plan to borrow $14,700 from the Bank of Rockwood. The Bank of Rockwood knew that it was a loan made for the benefit of the Bank of Huntsville. The money was placed to the credit of the Bank of Huntsville in the Bank of Rockwood; checked out by the Bank of Huntsville. These makers of the two notes to the Bank of Rockwood never received any benefit for the making of said notes except some of them saved their stock from becoming seriously impaired in the Bank of Huntsville.

As to who wrote the entry in the Bank of Huntsville's book that certain notes were sold to the directors, it is hard to ascertain. We think that this entry was made without authority. We are of the opinion that the facts, with reference to the transaction with

the Bank of Rockwood, to have been an accommodation made so far as the makers of said notes are concerned. An accommodation note is one to which the accommodating party puts his name, without consideration, for the purpose of benefiting or accommodating another party who desires to raised money on it, and who is to provide for the note when due. 1 Daniel on Neg. Inst., Section 189.

State Banking Board v. James, Texas Civ. Appeals, 264 S. W., 145.

In the case of Gowen v. Shute, reported in 4th Baxter, at pages 59 and 60, the Supreme Court said:

"It would seem that no citation of authority is necessary to sustain the position that if one borrows of another an amount of currency which, though issued unlawfully, nevertheless served to buy the borrower's food and raiment, and pay his debts without loss, he ought not to be heard to deny his liability because the currency, which would have been alike valuable to his friend if he had retained it, was, in fact, issued originally without lawful authority. There is a wholesome principle of morality which underlies these questions, which has cause to be crystalized into a cannon of the law, which compels a party to perform his contract when he has enjoyed the full benefit of it, and excludes defences which are foreign to the actual merits of his contract, and his moral obligation to discharge it."

The authorities relied upon by the appellant and quoted deal with action of Receivers of Banks which have failed and which are being wound up as insolvent concerns and are in Receivership and are not applicable to this case.

A different line of authority is in point in this case since the Bank successfully worked out of its financial straits, and again reached a good financial basis.

There was no positive action of insolvency by the Bank to authorize the assets to become a trust fund for its creditors so as to make the authorities relied upon in point. On the contrary it was and remained a going concern and worked out of its financial straits and again reached a good financial basis, and is now operating on a good financial basis.

In the case of Comfort v. McTeer, reported in 7th Lea, at pages 659 and 660, the Supreme Court said:

"The theory of the bill is that the assets of the bank as they existed when the insolvency of the Bank became known to its officers, became at once a trust fund for the creditors of the bank. But the law is clearly otherwise. There must be some positive act of insolvency, such as the filing of a bill to administer the assets, or the making a general assignment, or a permanent cessation to do business, to work the result suggested.

If the corporation continued to transact business in the honest belief, or even hope of working through its difficulties, the rights of innocent third parties will not be prejudiced: Moseby v. Williamson, 5 Heis., 278. If it were otherwise, nobody would be safe in dealing with a failing corporation. Undoubtedly the regular and fair transactions of the Commercial Bank during the two days preceding its execution of a general assignment were valid. Any honest adjustment of its accounts with its customers, based on the actual state of their mutual transactions, would be good.''

Under the rules and principles governing contracts and instruments, the rulings of the Supreme Court allow the facts developed so that the court may do justice between the parties, and this court delights in doing justice between the parties under all the facts surrounding the contract, note or agreement with all parties and facts before the Court.

In the case of McNairy v. Thompson, reported in 1st Sneed, at page 149 the Supreme Court said:

"The rules and principles laid down for the exposition of contracts have for their sole object 'to do justice between the parties, by enforcing a performance of their agreement according to the sense in which they mutually understood it at the time it was made.' Chitty on Con. 73. The intention is the governing principle of construction. In ascertaining the intention, the situation of the parties, the motives that led to the agreement, and the objects designed to be effected by it may all be looked to by the court. Id. 74, note 2.''

The above ruling is reaffirmed by the Supreme Court in the case of Nunnelly v. Warner Iron Company, reported in 94 Tenn., 282.

In the case of Railroad v. Bacon, reported in 128 Tenn., 171, the Supreme Court said:

"Contracts must be construed with reference to the situation and surroundings of the parties, the nature of the business in which they are engaged and to which the contract relates, and also with reference to the subject-matter.''

We are of the opinion that the Chancellor reached the equities in these two cases. We affirm his decrees. All the assignments of error are overruled and disallowed. The judgments of the lower court are affirmed. The cross-complainants will recover of the First National Bank of Huntsville and its sureties on appeal bond, the amount of the judgments rendered in the lower court with interest thereon from the date of its rendition and all the costs of the cause for which execution will issue.

Heiskell and Senter, JJ., concur.